UNTIED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

==========

No. 92-1207

==========


UNITED STATES OF AMERICA,
                    Plaintiff-Appellee
                    Cross-Appellant,

versus

VINCENT EDWARD HUMPHREY,
                    Defendant-Appellant
                    Cross-Appellee.

==========

Appeals from the United States District Court
for the Northern District of Texas

==========
(November 12, 1993)

Before WIENER and EMILIO M. GARZA, Circuit Judges, and CLEMENT,[*]
District Judge.

CLEMENT, District Judge:

I. FACTS AND PROCEDURAL HISTORY

Defendant-Appellant Vincent Edward Humphrey was arrested on
August 30, 1991, and charged with selling cocaine base and
possession of cocaine base with the intent to distribute. Humphrey
pleaded not guilty to both counts.

On September 17, 1991, a grand jury returned a one-count
indictment against Humphrey. The indictment alleged Humphrey

_____

    [*]    District Judge of the Eastern District of Louisiana,
sitting by designation.

possessed with intent to distribute 24.57 grams of cocaine base. On October 29, 1991, the original indictment was superseded by a new indictment adding a second count alleging that Humphrey distributed 0.99 grams of cocaine base.

The superseding indictment alleged that Humphrey took part in two separate drug transactions.

The first transaction was the sale of 0.99 grams of cocaine base to a cooperating individual in an apartment located in Lubbock, Texas on August 6, 1991. Electronic monitoring devices attached to the cooperating individual recorded the conversation, which took place while the cooperating individual purchased the cocaine base. Although the cooperating individual referred to Humphrey by name during the conversation, the tape did not record a clear response from the seller. At trial, Humphrey testified that he did not sell the cocaine base to the cooperating individual, and that he was in another room of the apartment at the time of the transaction. Two other witnesses corroborated Humphrey's testimony, testifying that Humphrey did not participate in the transaction. The cooperating individual testified that he purchased the cocaine base from Humphrey.

The second transaction was the alleged possession of, with the intent to distribute, 24.57 grams of cocaine base on August 30, 1991. On that date, police officers executed a search warrant for a second residence, also in Lubbock, Texas. As the police officers exited their vehicles to conduct the search, four black males standing in a driveway adjacent to the residence, including

2

Humphrey, ran from the scene. As the suspects fled, one of them threw a package to the ground. The package contained 24.57 grams of cocaine base. Officer William Bates testified that he saw Humphrey throw the package. Humphrey testified that a friend of his threw the package.

During the trial, the district court admitted into evidence, over Humphrey's objection, photographs of Humphrey's automobile, and a photograph of Humphrey taken shortly after the August 30, 1991 incident.

On December 12, 1991, Humphrey was convicted on both counts of the superseding indictment. Prior to sentencing, the government filed an objection to the Presentence Report prepared by the United States Probation Officer. The government objected to the probation officer's failure to recommend an upward adjustment of the defendant's Guideline Level in accordance with U.S.S.G. § 3C1.1, which mandates an upward adjustment for the willful obstruction of justice. The government contended that Humphrey perjured himself by testifying that he did not participate in the drug transactions. Comment 3(c) to § 3C1.1 provides that "committing, suborning, or attempting to suborn perjury" is one of the "types of conduct to which this enhancement applies." In the presentence report, the probation officer indicated that he was unable to recommend an upward adjustment because he was not sufficiently familiar with Humphrey's trial testimony to determine whether he committed perjury.

The sentencing hearing was held on March 6, 1992. At the

3

beginning of the hearing, the district court acknowledged the government's objection, and permitted the government to introduce into evidence the Presentence Report, Humphrey's response to that report, and a transcript of Humphrey's testimony. The hearing then proceeded as follows:

> Mr. Mateja (for the government): And finally, I didn't know how the Court wanted to approach the matter, but we can ask the Court to take judicial notice of the testimony of the witness at the trial of this proceeding. In the alternative we have Officer Gregg who can recap the pertinent parts of the testimony.
>
> The Court: That is not necessary. I recall the testimony in this case.
>
> Mr. Mateja: All right. Your Honor, that is all the evidence that we have at this time. Would you like for us to move into argument?
>
> The Court: No, sir. I have read your objections. I understand fully what your position is. I don't need any response to those objections. Those objections are overruled. Mr. Anderson, you filed some objections to the Presentence Report. Do you have any evidence to submit in support of your objections?
>
> Mr. Anderson: We have no objections.
>
> The Court: All right, sir. Your objections are overruled. The Court will adopt as the Court's findings those matters set forth in the Presentence Report[1] -- not only the background data and information, but also the analysis made under the Sentencing Guidelines. . . .

After rejecting the government's objection, the district court sentenced Humphrey to 78 months imprisonment, a sentence within his

---

[1] As noted above, the presentence report did not contain a finding of whether Humphrey committed perjury.

4

guideline range.  The district court found that there were "no aggravating or mitigating factors which would warrant a departure from the guideline range."

The government has appealed, seeking review of Humphrey's sentence under 28 U.S.C. § 3742(b)(2), which provides that the government may file a notice of appeal for review of an otherwise final sentence if the sentence "was imposed as a result of an incorrect application of the sentencing guidelines."  The government contends that the district court erred in failing to make a specific finding of whether Humphrey committed perjury. Humphrey contends that the district court need not make an explicit finding on the question of perjury when presented with an objection by the government to a failure to award an upward adjustment under § 3C1.1 of the Sentencing Guidelines.

On April 9, 1992, Max R. Tarbox was appointed by the district court to represent Humphrey on appeal, and Tarbox filed a timely notice of appeal.  In lieu of presenting arguments in support of that appeal, however, Tarbox has requested from this Court leave to withdraw as counsel for Humphrey.  Tarbox states that, after diligently investigating possible grounds for reversing Humphrey's conviction, he has determined that Humphrey's appeal is frivolous. He also states that Humphrey has not cooperated with him in preparing Humphrey's appeal or opposing the government's appeal.

Tarbox has submitted an August 10, 1992 letter to Humphrey, in which he expressed his view that there appeared to be no basis for an appeal, but informed Humphrey that he was still investigating

5

the matter.  Tarbox states that he has made repeated efforts to contact Humphrey since that date, but that Humphrey has not responded.

## II. HUMPHREY'S SENTENCE

In the appellate review of sentences, we examine factual findings subject to the "clearly erroneous" standard mandated by 28 U.S.C. § 3742(e), and we accord great deference to the trial judge's application of the sentencing guidelines. United States v. Martin, 893 F.2d 73, 74 (5th Cir. 1990); United States v. Mejia-Orosco, 867 F.2d 216, 218 (5th Cir.), clarified, 868 F.2d 807, cert. denied, 492 U.S. 924 (1989).  However, a sentence "'imposed as a result of an incorrect application of the sentencing guidelines' must be reversed even if reasonable."  Mejia-Orosco, 867 F.2d at 218; 28 U.S.C. § 3742(e)(1).

If a district court determines that an "accused has committed perjury at trial, an enhancement is required" under § 3C1.1. United States v. Dunnigan, ___ U.S. ___, 113 S. Ct. 1111, 1119 (1993).  Thus, the district court may not "simply [choose] not to apply the enhancement."  United States v. Friedman, ___ F.2d ___, 1993 U.S. App. LEXIS 13623 at *14 (2d Cir. June 10, 1993).  If the district court made an arbitrary decision not to enhance Humphrey's sentence, without considering whether Humphrey committed perjury, it has committed reversible error.  The application of § 3C1.1 is not discretionary.

The difficulty facing this Court is that it is not clear whether the district court rejected the government's objection

based on (1) an unstated finding that Humphrey did not commit perjury, or (2) an arbitrary decision not to apply § 3C1.1 of the sentencing guidelines. Humphrey contends that the district court need not make a finding on the perjury issue on the record, as such a finding may be presumed from the district court's rejection of the government's objection. We disagree.

In _Dunnington_, _supra_, the Supreme Court held that where a defendant objects to the district court's imposition of an upward adjustment under § 3C1.1, the

> district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. _See_ U.S.S.G. § 6A1.3 (Nov. 1989); Fed. Rule Crim. Proc. 32(c)(3)(D). _See also_ _Burns v. United States_, 501 U.S. ___, ___, 111 S. Ct. 2182, ___, 115 L. Ed. 2d 123 (1991). When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury. _See_ App. 29 ("The court finds that the defendant was untruthful at trial with respect to material matters in this case. By virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels") (emphasis added).

113 S. Ct. at 1117. As the Court noted, this requirement is mandated by Fed. R. Crim. P. 32(c)(3)(D), which provides that where a defendant alleges any factual inaccuracy in the presentence

7

report, the district court must "(i) make a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing."

This Court has often ordered district courts to make supplemental factual findings necessary to support the courts' rejections of defendants' objections to guideline determinations. See United States v. Buss, 928 F. 2d 150 (5th Cir. 1991) (remanded for finding of whether defendant used firearm solely for sport or recreation, which would entitle defendant to reduction under § 2K2.1(b)(2) of the Guidelines); United States v. Melton, 930 F. 2d 1096 (5th Cir. 1991) (remanded for finding of whether defendant was minor participant, which would entitle defendant to reduction under § 3B1.2); United States v. Hooten, 942 F.2d 878 (5th Cir. 1991) (remanded for finding of whether defendant possessed firearm during the commission of drug offense, necessary to justify the court's enhancement of defendant's sentence under § 2D1.1(b)(1)).

Humphrey points out that Dunnigan and the aforementioned decisions of this Court involved challenges by defendants to guideline level determinations, and that Fed. R. Crim. P. 32(c)(3)(D) only applies to objections made by defendants. Humphrey contends that the government, unlike criminal defendants, is not entitled to have the district court make specific factual findings necessary to the resolution of its objections to sentencing decisions.

Although this result is not explicitly compelled by Dunnigan,

8

Rule 32(c)(3)(D), or our prior decisions, we find that the district court did have an obligation to make a finding of whether Humphrey committed perjury in its consideration of the government's objection. We see little merit in Humphrey's contention that the district court is only required to make specific findings when addressing objections made by a defendant. Implicit in the government's right to object to guideline determinations, and our obligation to review those determinations, is the district court's obligation to make all factual findings necessary to establish the basis for its decisions.

We find persuasive the First Circuit's decision in <u>United States v. Tracy</u>, 989 F.2d 1279 (1st Cir. 1993). In <u>Tracy</u>, as in this case, the district court rejected the government's objection to the court's failure to impose an enhanced sentence for obstruction of justice, under § 3C1.1, based on the defendant's perjury. <u>Id</u>. at 1289. The district court reasoned as follows:

> [It] is a very close call. It is apparent to the Court that the jury rejected the credibility of this defendant and of his testimony at trial. This Court was present at that time and heard the testimony. This Court, too, disbelieved the accuracy of his testimony.
> Nevertheless, there are many policy considerations that surround the question of enhancing a base offense level which increases potential punishment on the basis of the Court's conclusion that perjury has been committed. And the Court simply is not comfortable in its own mind in concluding that the conduct amounts to perjury of sufficient significance to justify such an enhancement.

<u>Id</u>. The First Circuit found itself unable to determine the basis of the district court's decision:

9

> [I]t is not clear from the district court's discussion of obstruction of justice whether the court found that all of the elements of perjury were satisfied. While the district court expressly stated that it "disbelieved the accuracy of [Tracy's] testimony," we are unable to determine whether the court also found that the testimony concerned a material matter, or that Tracy intentionally provided the false testimony. It is also possible to interpret the district court's statements as finding perjury, but requiring something more than basic perjury to justify an enhancement for obstruction of justice.

Id. at 1289-90. The appeals court determined that the "proper resolution" was to "vacate the sentence and remand to the district court 'to make findings to support all the elements of a perjury violation,' or to articulate clearly the elements it believes have not been satisfied." Id. at 1290 (quoting Dunnigan, 113 S. Ct. at 1118).

Also persuasive is United States v. Ferrin, ___ F.2d ___, 1993 U.S. App. LEXIS 11579 (9th Cir. May 20, 1993). In Ferrin, the defendant pleaded guilty to aiding and abetting the illegal disposal of hazardous waste. The district court denied the government's request for an upward adjustment based on § 2Q1.2(b)(1), which requires an upward adjustment if the offense resulted in an "ongoing, continuous or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment." However, the district court failed to make a finding of whether the gas released into the air as a result of the defendant's conduct was hazardous. Id. at *17. The Ninth Circuit vacated the sentence, and remanded the case to the district court for a finding on that issue. Id. at *24.

10

Likewise, we find that the proper disposition of the government's appeal in this action is to vacate Humphrey's sentence, and remand the case to the district court for a specific finding of whether Humphrey committed perjury. If the district court finds that Humphrey did commit perjury, it must impose a two-level enhancement of his sentence. If the district court finds otherwise, Humphrey's sentence will not be changed. If appealed, we will review the district court's finding under the "clearly erroneous" standard of 28 U.S.C. § 3742(e).

### III. TARBOX'S MOTION FOR LEAVE TO WITHDRAW

Because further proceedings will be required in connection with the government's appeal, the Court will not permit Tarbox to withdraw entirely from his representation of Humphrey.[2] Nonetheless, the Court will consider whether he may be relieved of any further obligation to pursue Humphrey's appeal, and whether that appeal should be dismissed as frivolous.

An attorney, "whether appointed or paid," is "under an ethical obligation to refuse to prosecute a frivolous appeal." McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 436 (1988). An attorney presented with this dilemma is under an obligation to (1) advise his client that it would be a waste of money to prosecute the appeal and unethical for the lawyer to go forward with it, and (2) inform the court of his conclusion in a motion to withdraw. Id. at 437-39; Anders v. State of California, 386 U.S.

_____

[2] Of course, if Tarbox believes that he is unable to effectively represent Humphrey in the upcoming district court proceedings, he may seek leave to withdraw from that court.

11

738, 744 (1967).  The motion to withdraw must be accompanied by a so-called "Anders" or "no merit" brief referring to anything in the record that might arguably support the appeal.  McCoy, 486 U.S. at 439.

In his Anders brief, Tarbox points out that the jury's verdict was supported by substantial evidence.  First, the cooperating individual testified that he purchased cocaine base from Humphrey.  The jury had the discretion to believe this testimony and disbelieve the testimony of Humphrey and others who testified to the contrary.  Second, Officer Bates testified that Humphrey threw the package of cocaine base while fleeing from the police -- an allegation which Humphrey denied.  Again, it was within the jury's discretion to believe the government witness, Officer Bates, and disbelieve Humphrey and his witnesses.

Tarbox also draws the Court's attention to the two evidentiary objections timely made by Humphrey's trial counsel.

As noted above, the district court admitted into evidence photographs of Humphrey's automobile, which Humphrey objected to as irrelevant and prejudicial.  The photographs probably were irrelevant, as it was not disputed that Humphrey was present at the apartment complex at the time of the August 6, 1991 transaction, and Humphrey's automobile played no role in that transaction.  However, it is clear that their admission, if erroneous, was harmless error.  From a review of the record, it is clear that the photographs could not have "substantially influenced" the result, nor is there is "grave doubt" that the result was free from the

12

substantial influence of the evidence.  <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 256 (1988); Fed. R. Crim. P. 52(a); Fed. R. Evid. 103(a).

Tarbox also notes that the district court admitted over Humphrey's objection a photograph of Humphrey taken shortly after the August 30, 1991 incident.  The photograph was admissible for identification purposes, as the central issue concerning the August 30, 1991 incident was the identification of the individual who discarded the package containing cocaine base.  Even if inadmissible, its admission was harmless error under Fed. R. Crim. P. 52(a) and Fed. R. Evid. 103(a).

In addition to considering the points raised by Tarbox, the Court has conducted an independent examination of the record.  The record reveals that the district court made several other evidentiary rulings adverse to Humphrey other than those described by Tarbox.  However, none of them constitute reversible error.

First, the district court admitted into evidence, during the direct testimony of Officer Brumley (the officer who arranged that purchase), the (alleged) cocaine base purchased by the cooperating individual in the August 6, 1991 transaction.  Humphrey objected to the admission of the evidence, arguing that Brumley was unqualified to identify the substance as cocaine base.  The material was later identified by a qualified chemist as cocaine base, however, rendering any error made by the court harmless.

Second, the district court sustained the government's objection to Humphrey's attempt to elicit personal background

13

information from the cooperating individual. Even if this information was relevant, its exclusion was clearly harmless.

Third, Humphrey objected on relevancy grounds to the admission of his statement that he was not employed. The district court's decision to overrule this objection was correct, as the statement was relevant to the issue of how Humphrey acquired the $639 in cash found on his person when he was arrested on August 30, 1991.

Fourth, the district court permitted the government to cross-examine James Clark, a defense witness, about prior cocaine arrest. The district court ruled correctly, as Clark's prior arrest contradicted Clark's testimony that he knew nothing about the drug trade.

Finally, Officer Gregg testified that he recognized Humphrey from prior drug arrests or other dealings, implying that Humphrey had been involved in other drug transactions. Because the district court promptly instructed the jury to disregard that testimony, any prejudice it may have caused is insufficient to warrant a new trial.

The Court is unable to identify any possible grounds for appeal. From a review of the record, and the points raised in Tarbox's <u>Anders</u> brief, the Court concurs with Tarbox's conclusion that Humphrey's appeal is frivolous.

## IV. CONCLUSION

Accordingly,

Humphrey's appeal is DISMISSED, his conviction is AFFIRMED, his sentence is VACATED, and this action is REMANDED for resentencing in accordance with this opinion.