**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 93-1556**

**UNITED STATES of AMERICA,**

**Plaintiff-Appellee,**

**versus**

**DAVID RUSSELL STORM,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Northern District of Texas**

(October 19, 1994)

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant David Russell Storm (Storm) was convicted of conspiracy to commit mail fraud and equity skimming and the substantive offenses of mail fraud and equity skimming. Storm argues that the district court erred in denying his motions for continuance in violation of the Speedy Trial Act, refusing to submit requested jury instructions on good faith, and assessing a two-level increase in his offense level for obstruction of justice based on a finding of perjury. Finding no reversible error, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

From September 1987 to February 1989, Storm and his codefendant Doug Christianson (Christianson) purchased several dwellings in the Northern District of Texas.  At the time of purchase, each of those dwellings was subject to a loan secured by a mortgage or deed of trust insured, guaranteed or held by the Secretary of Housing and Urban Development (HUD) or by the Veterans' Administration (VA).  The mortgages were assumable and or transferable to Storm as a purchaser of the dwellings.  Storm signed the purchase agreements and deeds on those properties in which he agreed to assume and make payments.

Together, Storm and Christianson rented the homes for significantly less than the mortgage payments.[1]  Storm and Christianson caused the renters to mail their checks to a post office box Storm previously had rented in Kennedale, Texas.  Using Christianson's checking account, Storm cashed rent checks.  The rent proceeds were not applied toward the mortgage obligations in any notable amount, but rather, they were applied for the personal use of Storm and Christianson.  Although Storm received notices that his mortgages were delinquent, Storm failed to make the required payments.  Consequently, each of the rental properties were foreclosed.

On April 14, 1992, at Christianson's residence, an agent of HUD interviewed Storm regarding the above-cited events.  Storm

---

[1]  On occasion, Christianson represented to potential renters that he (Christianson) was Storm.

admitted his culpability in the equity skimming scheme. He also implicated Christianson as the leader and instigator. The HUD agent set forth Storm's confession in a written memorandum. The next day, Storm executed an affidavit in which he admitted to entering into several assumption agreements; however, contrary to his earlier statements, he did not admit any culpability and asserted that he "believed that [he] could sell these homes by finding a purchaser who could not qualify for conventional real estate financing who would assume the unpaid mortgages." In that same affidavit, Storm denied that Christianson had any involvement in the real estate scheme.

On November 4, 1992, Storm and Christianson were charged by indictment with one count of conspiracy to commit mail fraud and equity skimming in violation of 18 U.S.C. § 371, twelve counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of equity skimming in violation of 12 U.S.C. § 1709-2. On February 4, 1993, Storm and Christianson first appeared before a magistrate judge, both represented by counsel William Nelson. Nelson's representation of Storm was limited to the initial appearance that day. The record reflects that Nelson was to notify the court at a later date whether he would continue to represent "one, both, or any of the def[endant]s."

On February 12, 1993, Storm and Christianson, both represented by Nelson, appeared before the district court for arraignment on the indictment, and entered pleas of not guilty. At that time, the court scheduled the trial date for March 15, 1993, and further, set

-3-

a hearing for the next week to determine whether counsel would be allowed to represent both defendants due to a potential conflict of interest.

On February 19, 1993, the court held a hearing and determined that Nelson could <u>not</u> represent both defendants. The court appointed the Federal Public Defender to represent Storm, and on that same day, Storm appeared before the court with appointed counsel, Timothy Henry. Counsel orally requested a continuance based on the Speedy Trial Act, asserting that the March 15th trial date would be in violation of the 30 day-requirement which permits counsel adequate time to prepare for trial. The trial court disagreed, stating that the 30-day period runs from the defendant's first appearance before the court with counsel, and Storm's first appearance with counsel was more than 30 days prior to the trial date.

On March 1, 1993, counsel filed a written motion for a continuance, asserting that he needed more time to prepare for trial and that the 30-day requirement of the Speedy Trial Act would be violated. The government did not oppose the motion, citing the fact that court-appointed counsel first appeared with Storm on February 19, 1993. The court denied that motion. A week later, counsel filed a second motion for continuance, claiming, among other things, that forcing Storm to trial on March 15 would violate the Speedy Trial Act. The government opposed that motion, and the district court denied it.

At trial, Storm testified as a witness for Christianson. Specifically, Storm testified that Christianson "did the negotiation for [him], and that was all [Christianson] did." Storm testified that Christianson was unaware that he failed to make the mortgage payments. Storm did not tell Christianson of the delinquent payments because he "didn't want to look like a failure." Storm explained his previous contrary statements to the HUD agent by stating that he falsely put the blame on Christianson to direct the investigation away from himself. Storm defended his actions, testifying that he was a novice in the real estate business and that he had no intent to defraud when he engaged in the transactions at issue.

The district court refused to submit Storm's requested jury instructions on good faith. The jury found Storm and Christianson guilty as charged in the indictment. The Presentence Report (PSR) recommended a two-level enhancement of Storm's offense level for obstruction of justice based on Storm's testimony at trial. The PSR found that "[e]vidence showed that the defendant testified untruthfully at his trial concerning a material fact." The district court overruled Storm's objections, and adopted the PSR, assessing a two-level increase for obstruction of justice. The district court found that Storm had committed perjury during the investigation and prosecution of his offense regarding Christianson's involvement in the scheme. The court found that the testimony was material and that it was done with willful intent rather than as a result of confusion, mistake, or false memory.

The court sentenced Storm to 23 months imprisonment on each of the 14 counts, to run concurrently, and a two-year term of supervised release.

## II. SPEEDY TRIAL CLAIM

Storm contends that the district court's denial of his motion for continuance violated the 30-day rule of 18 U.S.C. § 3161(c)(2) of the Speedy Trial Act. Section 3161(c)(2) provides as follows:

> Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant <u>first appears through counsel</u> or expressly waives counsel and elects to proceed pro se.

(emphasis added). The facts underlying a ruling involving the Speedy Trial Act are reviewed for clear error, and the legal conclusions of the court are reviewed <u>de novo</u>. <u>United States v. Ortega-Mena</u>, 949 F.2d 156, 158 (5th Cir. 1991).

As previously set forth, on February 12, 1993, Storm and Christianson, both represented by Nelson, appeared before the district court for arraignment and entered pleas of not guilty. The court scheduled the trial for March 15, and set a hearing for February 19, 1993, to determine whether counsel's dual representation constituted a potential conflict of interest. Subsequently, at the February 19th hearing, the court determined Nelson could not represent both Storm and Christianson and appointed the Federal Public Defender to represent Storm. Storm appeared before the court that day with his appointed counsel.

Storm argues that he first appeared through counsel within the meaning of § 3161(c)(2) on February 19. He therefore contends that

-6-

because his trial commenced on March 15 (less than 30 days later), section 3161(c)(2) was violated.

In <u>United States v. Daly</u>, 716 F.2d 1499, 1505 (9th Cir. 1983), <u>cert. dismissed</u>, 465 U.S. 1075, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984), the Ninth Circuit held "that the 30-day period begins to run when an attorney appears on a defendant's behalf after the indictment or information has been filed, unless there is an indication that the attorney is appearing only for a limited purpose and will not further represent that defendant at trial." The Court cited the legislative history of § 3161(c)(2) and opined that it "indicates the provision was meant to guarantee a minimum period of thirty days for the preparation of the defense." <u>Id</u>. at 1504-05 (citing Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, <u>Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended</u>, at 10 (1981)).[2]

Additionally, in <u>United States v. Bigler</u>, 810 F.2d 1317, 1321-22 (5th Cir.), <u>cert. denied</u>, 484 U.S. 842, 108 S.Ct. 130, 98 L.Ed.2d 88 (1987), this Court discussed the 30-day requirement in the context of deciding whether that period could be excluded from the calculation of the 70-day period during which the defendant had to be brought to trial. There, we elaborated on the meaning of the

---

[2] <u>But see</u> <u>United States v. Darby</u>, 744 F.2d 1508, 1520 (11th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985) (expressly declined to adopt the reasoning of the Ninth Circuit in <u>Daly</u>, <u>supra</u>, finding that Congress did not have any "<u>particular</u> type of counsel in mind.") (emphasis in original).

phrase "first appearance with counsel" in § 3161(c)(2). In Bigler, the defendant first appeared with counsel before the court on August 23, when he plead guilty to federal charges. Subsequently, Bigler withdrew his guilty plea and on January 31, the court again appointed counsel for him. The scheduled trial date was March 3rd. Counsel, however, had a conflict that day. The court inquired of Bigler whether he wanted a continuance or he wanted to go to trial with a different court-appointed lawyer. Bigler elected to go to trial, and thus, on February 3, the trial court appointed new counsel. The court then inquired whether Bigler would waive the 30-day requirement because March 3 was less than 30 days from February 3. Bigler responded that he preferred March 5, and the trial court apparently rescheduled the trial to March 5.

Thus, although Bigler's first literal appearance with counsel before the court was significantly more than 30 days prior to trial, this Court reasoned that Bigler did not effectively appear with counsel in anticipation of trial until the February 3rd appearance with actual trial counsel. We noted that until that appearance, "Bigler had neither waived his right to counsel nor received appointed counsel who could represent him at trial." 810 F.2d at 1321 (emphasis added). We further stated that "[n]ot until then was preparation for his defense possible in any meaningful manner." Id. at 1322.[3]

---

[3] Cf. United States v. Rojas-Contreras, 474 U.S. 231, 234-36, 106 S.Ct. 555, 557-58, 88 L.Ed.2d 537 (1985) (Supreme Court rejected contention that 30-day period began to run from date of superseding indictment, stating that "the 30-day trial preparation period of § 3161(c)(2)" had been satisfied).

Pursuant to our decision in Bigler and the Ninth Circuit's analysis in Daly, supra, Storm's first appearance with counsel was on February 19, less than 30 days from March 15, the day Storm was tried. We hold that Storm was tried in violation of the 30-day trial preparation requirement found in § 3161(c)(2) of the Speedy Trial Act. Even assuming that the first appearance of the defendant before the court with an attorney other than trial counsel is sufficient to start the running of the 30-day period contemplated in § 3161(c)(2), under the circumstances of this case, we would not allow Storm's appearance with attorney Nelson to start the clock. The court below found that Nelson's representation of both Christianson and Storm presented a potential conflict of interest. Additionally, Nelson had given the government an affidavit executed by Storm in which he admitted to the real estate transactions at issue (but not his intent to defraud) and attempted to exculpate Christianson. After delivering the affidavit to the government, Nelson continued to represent Christianson and Storm. In light of those facts, it would be unconscionable to start the 30-day trial preparation period on the basis of Nelson's representation of Storm.

That, however, is not the end of the inquiry. In United States v. Marroquin, 885 F.2d 1240, 1245 (5th Cir. 1989), cert. denied, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990),[4] we

_____

[4] Storm contends that this determination in Marroquin was dicta. Assuming without deciding that it was not necessary to the holding in that case, we find such reasoning persuasive and now adopt it.

explained that because Congress failed to provide a sanction for the violation of § 3161(c)(2), a defendant must show that he was prejudiced by such violation. Storm disputes neither the overwhelming evidence showing that he engaged in the real estate transactions at issue nor that he initially made the statements memorialized by the HUD agent in a memo. Storm's defense was that he did not have the intent to defraud when he assumed the mortgages. Storm testified at trial, and he clearly was in the unique position of providing defense evidence regarding his own intent. Simply put, the jury did not find his testimony credible. Based on these facts, we cannot perceive how Storm was harmed by the violation of § 3161(c)(2).

### III. JURY INSTRUCTION ON GOOD FAITH

Storm next argues that the district court erred in failing to include in the jury charge his requested instruction concerning his defense of "good faith." A trial court's refusal to include a requested instruction in the jury charge is reviewed under an abuse of discretion standard, and the court is afforded substantial latitude in formulating its instructions. See United States v. Rochester, 898 F.2d 971, 978 (5th Cir. 1990). Refusal to include an instruction constitutes reversible error only upon the occurrence of all three of the following conditions: (1) the requested instruction is substantially correct; (2) the actual charge given to the jury did not substantially cover the content of the proposed instruction; and (3) the omission of the instruction would seriously impair the defendant's ability to present his

defense.  See United States v. Daniel, 957 F.2d 162, 170 (5th Cir. 1992).

Storm relies on United States v. Goss, 650 F.2d 1336 (5th Cir. Unit A 1981), for the proposition that the trial court committed reversible error in denying his request for an instruction on good faith.  In Goss, we held that a trial court's refusal to grant a defendant's request for an instruction on good faith, a complete defense to the charge of intent to defraud under the mail fraud statute, was reversible error.  Id. at 1344-45.  "Goss, however, must be read in light of later cases which indicate that the failure to instruct on good faith is not fatal when the jury is given a detailed instruction on specific intent and the defendant has the opportunity to argue good faith to the jury."  United States v. Rochester, 898 F.2d at 978 (citing United States v. Hunt, 794 F.2d 1095 (5th Cir. 1986)).[5]

Here, the district court did not abuse its discretion in refusing to submit the instruction regarding good faith because the defense of good faith was substantially covered by the charge given

---

[5]  Storm contends that if Goss is inconsistent with Rochester, the earlier decision in Goss controls.  In United States v. Gray, 751 F.2d 733, 735 (5th Cir. 1985), we recognized that there was some tension in our decisions regarding "the sufficiency of the submission of a defendant's theory of defense."  We noted that United States v. Lewis, 592 F.2d 1282 (5th Cir. 1979), and Goss had "adopted a per se rule, with its companion limit of looking solely to the charge, [which] was inconsistent with earlier cases including United States v. Wellendorf, 574 F.2d 1289, 1290-91 (5th Cir. 1978)."  Gray, 751 F.2d at 735.  We found that to the extent that Goss was inconsistent with the earlier cases that provided that the charge must be examined in the full context of the trial, it was not the law of the circuit.  Id. at 735-36.

to the jury. The instructions on the terms "knowingly" and "willfully" follow those approved in this circuit. See United States v. St. Gelais, 952 F.2d 90,93-94 (5th Cir.), cert. denied, __ U.S. __, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992); Rochester, supra. Storm testified regarding his intentions when he engaged in the real estate transactions in question. Moreover, counsel was not circumscribed in his argument to the jury regarding Storm's defense of good faith. Storm was not inhibited by the lack of a good faith instruction from presenting his theory of the case, including his assertion of good faith that "he had no intent to ever violate the law." The refusal of the requested instructions did not constitute reversible error.

### IV. OBSTRUCTION OF JUSTICE ENHANCEMENT

Storm contends that the district court erred in imposing a two-level increase in his offense level for obstruction of justice based on its finding of perjured testimony. See U.S.S.G. § 3C1.1. A district court's finding that a defendant has obstructed justice under section 3C1.1 is a factual finding and thus, reviewed for clear error. United States v. Laury, 985 F.2d 1293, 1308 (5th Cir. 1993). Great deference is afforded the trial court's application of the sentencing guidelines. United States v. Humphrey, 7 F.3d 1186, 1189 (5th Cir. 1993). However, where a sentence is imposed as a result of an incorrect application of the guidelines, it must be reversed even if reasonable. Id.

Section 3C1.1 provides as follows: "If the defendant willfully obstructed or impeded, or attempted to obstruct or

-12-

impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."  The commentary specifically lists "committing, suborning, or attempting to suborn perjury" as examples of conduct to which the enhancement applies.  U.S.S.G. § 3C1.1 comment. (n.3(b)).  If a district court finds that a defendant has committed perjury at trial, an enhancement is required under section 3C1.1.  Humphrey, 7 F.3d at 1189.

Storm contends that the district court's findings of perjury that form the basis for the obstruction of justice enhancement are inadequate.  Recently, the Supreme Court has opined that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition."  United States v. Dunnigan, __ U.S. __, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993).  "A witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."  Id. at 1116.  When the district court is making such a finding, the preferable practice is to address each element of the alleged perjury in a separate and clear finding.  Id. at 1117.  The finding is sufficient, however, if the court makes a finding of an obstruction or impediment of justice

that encompasses all of the factual predicates for a finding of perjury.  Id.

In Dunnigan, Supreme Court approved the following findings by the district court:

> The court finds that the defendant was untruthful at trial with respect to material matters in this case. [B]y virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

Dunnigan, 113 S.Ct. at 1117 (brackets in opinion; emphasis omitted).  The Supreme Court found there was support in the record for those findings because numerous witnesses contradicted Dunnigan regarding so many facts on which she could not have been mistaken. Id.

At the sentencing hearing, Storm objected to the probation officer's recommendation of a two-level increase for obstruction of justice based on a finding of perjured testimony.  In response to the objection, the trial court found as follows:

> . . . I find that the defendant wilfully obstructed and impeded and attempted to obstruct and impede the administration of justice during the investigation and prosecution of the instant offense.
>
> I find that the defendant committed perjury by giving false testimony during the trial of this action about a material fact with the willful intent to provide false testimony, and that that was done with that intent, rather than as a result of confusion, mistake or false memory.
>
> I further find that the defendant obstructed and impeded justice by giving a false statement under oath to law enforcement officials in the form of Government's Exhibit 1, and that that false statement was given under oath by the defendant with the willful intent to provide false information to the government, rather than by

-14-

reason -- or as the result of confusion, mistake or false memory.

I have no doubt in my mind that the defendant gave false testimony at the trial with the intent and for the reasons I've indicated, and I have no doubt in my mind that the false affidavit was given by the defendant for those reasons. And I have firm convictions as to all of the facts I have found.

I think the evidence is quite clear, and <u>the false testimony that I am mentioning relates to the involvement of Mr. Christianson in the criminal matters that were the subject matter of the trial of this case</u>.

Therefore, I conclude that the two-level increase shown in the presentence investigation report for obstruction or impeding the administration of justice was a proper increase.

Supp. R. at 7-8 (emphasis added).[6]

We have affirmed an obstruction of justice enhancement based

on the following findings by a district court:

Obviously if the jury's verdict means anything, then [the defendant] did commit perjury when he testified, and I believe the jury's verdict means exactly what it found. . . . [I]f the jury had been convinced that [the defendant] had obtained the money as he indicated, it may have affected the determination of guilt. Statements made by the defendant were made in an effort to obstruct or impede the administration of justice during prosecution.

<u>Laury</u>, 985 F.2d at 1309.

---

[6] Additionally, the court adopted the findings contained in Storm's presentence report. The PSR provided that "Christianson [sic] has obstructed justice as described in U.S.S.G. 3C1.1 by testifying untruthfully at his trial. He stated that Douglas Christianson was not involved in the mail fraud and equity scheming conspiracy even though the evidence presented at trial showed Christianson was involved, and that Storm knew he was involved." The judgment provides that the sentencing court adopted the findings in the presentence report. Accordingly, because the court expressly adopted those findings, they are treated as those of the district court. <u>United States v. Laury</u>, 985 F.2d at 1308 n.18.

Specifically, Storm requests this Court to hold that the sentencing guidelines require the following three findings before a sentence may be enhanced for obstruction of justice based on a finding of perjured trial testimony. The district court must: (1) find that no reasonable trier of fact could have found the defendant's testimony true; (2) find that the defendant's guilt is supported by evidence other than the jury's having disbelieved him; and (3) make specific findings regarding which portion of the defendant's testimony was material.

In support of the first proposed finding that no reasonable trier of fact could have found the defendant's testimony true, Storm relies on the commentary to the guideline pertaining to obstruction of justice. In pertinent part, the commentary provides that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1 comment. (n.1).

Storm acknowledges that we have interpreted that commentary as simply instructing "the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." United States v. Franco-Torres, 869 F.2d 797, 801 (5th Cir. 1989). Nevertheless, citing opinions from other circuits,[7] Storm attempts to distinguish Franco-Torres

_____

[7] United States v. Willis, 940 F.2d 1136, 1140 (8th Cir. 1991), cert. denied, __ U.S. __, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993); United States v. Thompson, 962 F.2d 1069, 1072 (D.C. Cir. 1992), (Wald, J., dissenting), cert. denied, __ U.S. __, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993); United States v. O'Meara, 895

-16-

on the basis that, unlike the instant case, <u>Franco-Torres</u> did not involve an obstruction of justice enhancement based on perjured testimony. We are not persuaded by Storm's arguments or his authorities. Moreover, because we have construed the commentary in question to apply in a case involving an enhancement for obstruction of justice based on a finding of perjury before the court in a suppression hearing, Storm's distinction fails. <u>United States v. Vaquero</u>, 997 F.2d 78, 85 (5th Cir.), <u>cert. denied</u>, __ U.S. __, 114 S.Ct. 614, 126 L.Ed.2d 578 (1993). The Fifth Circuit adheres to the rule that one panel may not overrule the decision of another. <u>United States v. Taylor</u>, 933 F.2d 307, 313 (5th Cir.), cert. denied, __ U.S. __, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991). Storm is precluded from prevailing on this claim.

Regarding the second and third proposed required findings, Storm argues that the district court must find that his guilt was supported by evidence other than the jury's having disbelieved him, and further, it must make specific findings regarding which portion of his testimony was material. "Material," as defined in the commentary to the sentencing guidelines, "means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 comment. (n.5).

Contrary to Storm's contentions, the district court's finding that Storm committed perjury was sufficient. After Storm objected,

<hr>

F.2d 1216, 1222 (8th Cir.) (Bright, J., concurring in part and dissenting in part), <u>cert. denied</u>, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

the court did more than adopt the PSR or make its determination based solely on the jury's verdict. It found that Storm had committed perjury during the investigation and prosecution of his offense, both in his testimony under oath during the trial about a material fact and in giving a false statement under oath in the affidavit. The court specifically found that the "the false testimony that I am mentioning relates to the involvement of Mr. Christianson in the criminal matters that were the subject matter of the trial of this case." Storm's testimony regarding the involvement of Christianson in the real estate scheme clearly was "material" because, if believed, it would tend to influence or affect the jury's verdict. The record supports the district court's finding that Storm committed perjury. Consequently, the district court did not clearly err in finding that Storm had obstructed justice.

## V. CONCLUSION

For the foregoing reasons, the judgment and sentence are AFFIRMED.

EMILIO M. GARZA, Circuit Judge, concurring specially:

I concur with the judgment of the court and its opinion except the reasoning of Part II. I agree with the majority's conclusion that Storm was not prejudiced by the timing of his trial and therefore has not met the prejudice requirement of *United States v. Marroquin*, 885 F.2d 1240, 1245 (5th Cir. 1989), *cert. denied*, 494 U.S. 1079, 110 S. Ct. 1807, 108 L. Ed. 2d 938 (1990). Consequently, the issue of whether Storm first appeared through counsel on February 12 or 19 is unnecessary to the outcome of this case. Because the majority does discuss the meaning of "first appears through counsel," I concur specially.

The majority's rather flexible interpretation of "first appears through counsel" essentially reads into § 3161(c)(2) a qualitative limitation on "appears." Not only must counsel appear on a defendant's behalf, but he must also appear without a potential conflict of interest. If he appears with a potential conflict of interest, and that conflict materializes, the 30-day clock will be reset when new counsel appears (unless of course that counsel also has a potential conflict of interest). The majority's "without a conflict of interest" limitation on the language of the Speedy Trial Act is based on neither the plain meaning of the statute nor its legislative history.

Furthermore, the majority unnecessarily extends the reasoning of *United States v. Daly*, 716 F.2d 1499 (9th Cir. 1983), *cert. dismissed*, 465 U.S. 1075, 104 S. Ct. 1456, 79 L. Ed. 2d 773 (1984) and *United States v. Bigler*, 810 F.2d 1317 (5th Cir.), *cert.*

*denied*, 484 U.S. 842, 108 S. Ct. 130, 98 L. Ed. 2d 88 (1987), to the facts of this case. In *Daly*, the Ninth Circuit held that the 30-day clock of § 3161(c)(2) did not start to run when the defendant appeared with counsel explicitly appointed to represent him only at his bail hearing. 716 F.2d at 1505. In this case, Nelson's appearance was not similarly limited. Nelson appeared on Storm's behalf before the magistrate on February 4, and Nelson later appeared on Storm's behalf at his February 12 arraignment. Nelson then ceased to represent Storm on February 19 when the court found his dual representation of Storm and Christianson to involve a conflict of interest.[8]

If resolution of the question whether Storm first appeared through counsel on February 12 or 19 were necessary to the outcome of this case, *United States v. Darby*, 744 F.2d 1508 (11th Cir. 1984), *cert. denied*, 471 U.S. 1100, 105 S. Ct. 2322, 85 L. Ed. 2d 841 (1985), would be the most analogous precedent. In *Darby*, the Eleventh Circuit held that the defendant first appeared through counsel at his arraignment even though the attorney who represented him at the arraignment later withdrew due to a conflict of interest. *Id.* at 1519-21. The court expressly rejected the reasoning of the Ninth Circuit in *Daly* as inconsistent with the

---

[8]    Our decision in *Bigler* does not control this case for two reasons. First, *Bigler* involved an alleged violation of 18 U.S.C. § 3161(c)(1), and the question was whether the defendant was tried within the 70-day period provided by that section. 810 F.2d at 1319. Second, the outcome of our interpretation of whether Bigler's appearance with his first appointed counsel was his "first appearance through counsel" under § 3161(c)(2) was irrelevant because the timing of his trial violated the Speedy Trial Act either way. *Id.* at 1322. Consequently our discussion of the meaning of "first appears through counsel" was *dicta*.

plain meaning of the § 3161(c)(2), *id.* at 1520, but it also distinguished the case on factual grounds, noting that the attorney in *Daly* filed an expressly limited special appearance, while the defendant in *Darby* filed a general appearance. *Id.* at 1520-21 n.5.[9] *See also United States v. Moya-Gomez*, 860 F.2d 706, 742 n.30 (7th Cir. 1988) (even under the *Daly* approach, "the thirty-day preparation period begins to run once counsel enters a general appearance on the defendant's behalf"), *cert. denied*, 492 U.S. 908, 109 S. Ct 3221, 106 L. Ed. 2d 571 (1989). In this case, Storm appeared through Nelson at his arraignment, although there was a potential conflict of interest to be determined at a later date. This case therefore most closely resembles *Darby*.

For the foregoing reasons, I do not join either the majority's interpretation of § 3161(c)(2) or its application of that interpretation to the facts of this case.

---

[9] The defendant in *Daly* tried to characterize his first counsel's appearances as "limited," but the court noted that there would have been no reason for his first counsel to withdraw due to a conflict of interest if he had not intended to represent the defendant at trial. *Daly*, 744 F.2d at 1521 n.5.