United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 22, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-31181
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE W. WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Louisiana
(No. 01-CR-60041-1)

_____

Before KING, Chief Judge, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Appellant George W. Williams ("Williams") was convicted of fraud, conspiracy to commit fraud, money laundering, conspiracy to commit money laundering, and criminal forfeiture. Williams contends that the district court erred by enhancing his sentence on the ground that he committed perjury at trial, and by departing upward from the sentencing guidelines based on the fraudulent scheme's complexity and large number of victims.

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

# I.  FACTS AND PROCEEDINGS

Williams was president, director, and a founding partner of CPR Medical, Inc. ("CPR"). During his tenure with CPR, Williams induced various persons to invest in the company by issuing a series of false statements about CPR's low-voltage heart difibrillator, which was called the C-FIB. Williams falsely claimed that the C-FIB was patented and ready for manufacture, that it had been approved by the U. S. Food & Drug Administration ("FDA"), and that CPR would make an initial public offering of its stock due to the C-FIB's early success.

On April 13, 2001, Williams and two fellow CPR directors were charged with 51 counts of fraud, conspiracy to commit fraud, money laundering, conspiracy to commit money laundering, and criminal forfeiture. Williams's co-defendants pleaded guilty, and Williams was convicted of all counts following a jury trial. At the sentencing hearing, the district court grouped Williams's offenses, and applied the base-offense level of the money laundering guideline on the ground that it was the highest amongst the grouped offenses. *See* U.S.S.G. § 3D1.2 (1998). The court enhanced Williams's offense level by two based on its finding that he obstructed justice by committing perjury at trial. *See* U.S.S.G. § 3C1.1 (1998). The court then departed upward from the guidelines four levels on the ground that the money laundering scheme was complex and involved a large number of victims. *See* U.S.S.G. § 5K2.0 (1998). The court reasoned that the scheme required deposits into five different accounts at separate banks, and harmed approximately 297 persons.

Williams appeals, contending that the district court erred by enhancing his sentence based on obstruction of justice, and by departing upward from the guidelines based on the scheme's complexity

2

and large number of victims.[1]

## II.  STANDARD OF REVIEW

"A finding of obstruction of justice under § 3C1.1 is a factual finding reviewed for clear error." *United States v. Edwards*, 303 F.3d 606, 645-46 (5th Cir. 2002).  A factual finding is not clearly erroneous if it is plausible in light of the complete record.  *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).  "[C]redibility determinations in sentencing hearings are peculiarly within the province of the trier-of-fact."  *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996).

The standard of review for sentencing departures is governed by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act").  Pub. L. No. 108-21, 117 Stat. 650 (April 30, 2003).  The PROTECT Act provides that this Court should *not* defer to district court conclusions in our "determinations under subsection 3(A) or 3(B)" of 18 U.S.C. § 3742(e).[2]  Subsection 3(A) is not at issue in this appeal.[3]  Subsection 3(B) provides that the court of appeals shall determine whether

> the sentence departs from the applicable guideline range based on a factor that—
> (i) does not advance the objectives set forth in section 3553(a)(2); or
> (ii) is not authorized under section 3553(b); or
> (iii) is not justified by the facts of the case; . . .

This Court in *United States v. Bell*, No. 03-20194, 2004 WL 1114580, at *3 (5th Cir. May 19, 2004),

---

[1] Williams waived his recusal claim at oral argument.

[2] Williams's appeal was pending on the PROTECT Act's enactment date.  This Court recently held that the PROTECT Act's *de novo* standard of review may be applied retroactively to cases, such as this one, where sentencing occurred prior to the Act's effective date.  *See United States v. Bell*, No. 03-20194, 2004 WL 1114580, at *2 (5th Cir. May 19, 2004).

[3] Subsection (3)(A) mandates that the court of appeals review whether "the district court failed to provide the written statements of reasons required by section 3553(c)."

interpreted the PROTECT Act, and held that

> we must review *de novo* the sentencing court's decision to depart (under subsection (3)(B)), determining whether the departure is based on appropriate factors and taking into account the statutory provisions listed in (3)(B)(i) and (ii), the facts of the case under review, and the sentencing court's application of the guidelines to those facts.

## III. ANALYSIS

A.    Enhancement for obstruction of justice based on perjury

Williams first contends that the district court erred when it applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1  Section 3C1.1 provides for a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." *United States v. Storm*, 36 F.3d 1289, 1295 (5th Cir. 1994) (citing U.S.S.G. § 3C1.1 (1994)).  "If a district court finds that a defendant has committed perjury at trial, an enhancement is required under section 3C1.1." *Id.*

Perjury occurs when a witness (1) testifies under oath or affirmation, (2) gives false testimony concerning a material matter, and (3) does so "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  Testimony is "material" which, "if believed, would tend to influence or affect the issue under determination." *Storm*, 36 F.3d at 1297.  If the defendant objects to a sentence adjustment for perjury, the district court must make independent findings that the defendant committed perjury. *See United States v. Como*, 53 F.3d 87, 89 (5th Cir. 1995).  "The finding is sufficient . . . if the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Storm*, 36 F.3d at 1295.

4

At the sentencing hearing, the district court identified several specific instances of perjury by Williams. Williams testified at trial that he was not responsible for a scrolling ticker on CPR's website that falsely touted the C-FIB as a patented device, and testified that he did not have a pre-investment conversation with investor Mark Goodyear. These two instances of Williams's testimony, however, were directly contradicted by the testimony of government witnesses: CPR's web designer testified that Williams provided the website's misleading information; and Goodyear testified that Williams told him prior to his investment that CPR's technology was patented, that the product had received FDA approval, and that a public offering of CPR stock was "a done deal." Williams's false testimony was material because it implicated his efforts to induce persons to invest in CPR. Further, the record does not indicate that Williams's controverted testimony was the result of confusion or mistake. As a result, the district court's two-level enhancement for obstruction of justice pursuant to § 3C1.1 did not constitute clear error.

B.     Upward departure pursuant to § 5K2.0

Williams next contends that the district court erred by imposing a four-level upward departure from the applicable guideline range based on the money laundering scheme's complexity and large number of victims. Section 5K2.0 of the guidelines states that a district court may depart from the applicable guideline range when it finds "'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (1998) (quoting 18 U.S.C. § 3553(b)).

This Court, in evaluating the propriety of a departure, must first review whether the departing

factor is forbidden, encouraged, discouraged, or unmentioned by the Sentencing Commission. *See Koon v. United States*, 518 U.S. 81, 95 (1996); *United States v. Threadgill,* 172 F.3d 357, 374 (5th Cir. 1999).

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

*Koon*, 518 U.S. at 95-96.

It is well established that an offense's complexity and number of victims are departing factors that are encouraged by the Sentencing Commission. *See generally* U.S.S.G. § 2B2.1(b)(1) (1998) (providing an enhancement for "more than minimal planning"); U.S.S.G. § 2F1.1(b)(2) (1998) (describing a specific offense charact eristic for "a scheme to defraud more than one victim"). Although the 1998 money laundering guideline does not expressly "take into account" these two factors, the guideline does calculate harm by reference to a loss table that accounts for losses up to $100 million. *See* U.S.S.G. § 2S1.1(b)(2) (1998). In *United States v. Corrigan*, the Sixth Circuit held that a loss table calculating harm caused by fraud presupposed the existence of multiple victims. 128 F.3d 330, 335 (6th Cir. 1997). The court reasoned that "[i]t is inconceivable that a provision which calculates loss levels of up to $80,000,000 would consider only one victim" and that "[a] loss figure this great presupposes a large number of victims." *Id.* Following the reasoning of the Sixth Circuit, we hold that the 1998 money laundering guideline, which provides for losses up to $100 million, clearly presupposes that money laundering offenses are complex and involve a large number

6

of victims.

Because the departing factors are encouraged by the Commission, but taken into account by the applicable guideline, the court's decision to depart is only permissible if these factors are present in Williams's case to an exceptional degree. This Court has found that the money laundering guideline governs "long-running schemes far more elaborate than [an] isolated instance of money-laundering." *United States v. Hemmingson*, 157 F.3d 347, 363 (5th Cir. 1998). In *United States v. Tansley*, 986 F.2d 880 (5th Cir. 1993), involving a nationwide telemarketing scheme operated by 18 principals that victimized 3,500 people for a total loss of $1.5 million, the district court elected not to depart upward from the money laundering guideline based on the scheme's complexity or its large number of victims. In *United States v. Peterson*, 244 F.3d 385 (5th Cir. 2001), the district court did not depart upward based on scheme complexity or number of victims even though the money laundering enterprise lasted three years, victimized 27,000 property owners, and collected more than $9 million for services not rendered.[4] In light of these decisions, Williams's scheme—harming 297 persons and involving deposits in five different banks—is exceptional in neither its complexity nor its number of victims. We therefore conclude that the court erred by departing upward from the sentencing guidelines pursuant to § 5K2.0.

### IV. CONCLUSION

The district court did not clearly err by applying a sentence enhancement for obstruction of justice based on perjury. It did, however, err by departing upward from the money laundering

---

[4] In the two related cases where managers of this operation were prosecuted, there was no indication that the district court departed from the money laundering guideline based on the scheme's complexity or number of victims. *United States v. Reissig*, 186 F.3d 617 (5th Cir. 1999).

guideline based on the scheme's complexity and large number of victims. We VACATE the sentencing order and REMAND to the district court for resentencing in accordance with this opinion.