UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40711
_____


UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                    versus

JUAN GABRIEL CISNEROS, JAVIER ROJAS CISNEROS,
and IVO PEREZ, JR.,

                                    Defendants-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Texas
_____
May 13, 1997

Before REAVLEY, GARWOOD, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

     This direct criminal appeal involves three appellants who were
convicted of various drug offenses.  In regard to their
convictions, the arguments on appeal include: a Speedy Trial Act
violation; a challenge to the district court's denial of their
motion for new trial; a challenge to the sufficiency of the
evidence; and a violation of the Fourth Amendment.  In regard to
sentencing, the issues include one of first impression, namely,
whether a deferred adjudication in Texas constitutes a "prior
conviction" in the context of 21 U.S.C. § 841(b)(1)(A), a mandatory
sentence enhancement provision.  Finding no reversible error, we

affirm.

I.  PROCEDURAL HISTORY

On April 4, 1995, Ivo Perez, Jr. (Perez), Juan Gabriel Cisneros (Juan), and Javier Rojas Cisneros (Javier) were charged,[1] along with ten other codefendants, with various drug trafficking offenses in a superseding twenty-count indictment.  The following six counts all alleged violations of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B) and 18 U.S.C. § 2.  Count 10 charged Perez with possession with intent to distribute in excess of 100 kilograms of marijuana on March 7, 1992.  Count 11 charged Perez with possession with intent to distribute in excess of 1000 kilograms of marijuana on March 24, 1992.  Count 12 charged Perez with possession with intent to distribute in excess of 100 kilograms of marijuana in August 1992.  Counts 13 and 14 charged Juan and Javier with possession with intent to distribute in excess of 100 kilograms of marijuana in May 1994.  Count 19 charged Juan and Javier with possession with intent to distribute in excess of 100 kilograms of marijuana on June 7, 1994.

Count 17 charged that, from 1986 until the return of the indictment in April 1995, Perez, Juan, and Javier conspired to possess with intent to distribute in excess of 1000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and § 846.  Finally, count 20 charged Juan and Javier with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i).

On May 9, 1995, the district court, determining that there was

_____

[1]  Juan and Javier Cisneros are brothers.

2

a possible conflict of interest between the Cisneroses and Perez, ordered their common counsel disqualified from representing Perez. Perez then retained new counsel. On May 25, Javier moved to suppress evidence seized from a search of his residence, and Perez's new attorney moved for a continuance. Both motions were denied, and a jury trial commenced on June 2, 1995. The jury found the defendants guilty as charged.

The defendants moved for a new trial based upon the discovery of a "new witness." The district court, after holding an evidentiary hearing, denied the motion, and sentenced the defendants as follows: (Juan) 360 months on each of the possession counts, life imprisonment on the conspiracy count, and 240 months on the money laundering count; (Javier) 262 months on the possession and conspiracy counts, and 240 months on the money laundering count; (Perez) 240 months on all counts.[2]

II.  ANALYSIS

A.  SPEEDY TRIAL ACT/CONTINUANCE

Perez argues that the district court's denial of his motion for continuance violated the Speedy Trial Act. 18 U.S.C. § 3161(c)(2). Section 3161(c)(2) provides that "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se."

When evaluating a district court's ruling involving the Speedy

---

[2]  The district court imposed the sentences of each of the defendants to run concurrently.

3

Trial Act, we review facts for clear error and legal conclusions de novo.  United States v. Ortega-Mena, 949 F.2d 156, 158 (5th Cir. 1991).  Here, the facts underlying the district court's ruling are undisputed.  On April 20, 1995, Perez, along with his two codefendants, made his first appearance with counsel.  On May 9, 1995, the district court, upon the Government's motion, disqualified Perez's counsel due to conflict of interest.
At the conclusion of the hearing, the district court instructed counsel to "please advise Mr. Perez and the magistrate that this case is already set for final pretrial and jury selection.  . . . It may require additional time to be given to the attorney or the like."

Later that day, Perez appeared before the magistrate judge who advised him that he should timely retain counsel and that he was "entitled to a 30-day period for preparation of trial with the new attorney."  On May 22, Perez retained counsel, who entered his appearance three days later on May 25, 1995.  That same day, Perez's new counsel filed a motion for a 60-day continuance, asserting that one week was an insufficient amount of time to prepare for a "case of this magnitude."  The district court denied the motion without reasons on June 1, and jury selection began the next day.  Counsel filed a motion for a 30-day continuance on June 2, 1995, which was denied without reasons that same day.  Trial on the merits began on June 12, 1995.

To support his claim that § 3161(c)(2) of the Speedy Trial Act was violated, Perez relies on this Court's decision in United States v. Storm, 36 F.3d 1289 (5th Cir. 1994), cert. denied, __

4

U.S. __, 115 S.Ct. 1798 (1995).  In that case, the two codefendants, represented by the same attorney, appeared before the court on February 12, and the court scheduled a hearing on February 19, to determine whether there existed a potential conflict of interest.  The court also scheduled the trial for March 15.  On the day of the hearing, February 19, the court disqualified Storm's counsel and appointed an attorney to represent him.  That same day, newly appointed counsel appeared before the court with Storm.  At that time, counsel moved for a continuance based on the Speedy Trial Act, arguing that going to trial on March 15 would violate the 30-day requirement for counsel's trial preparation.  The district court denied the motion, "stating that the 30-day period runs from the defendant's first appearance before the court with counsel, and Storm's first appearance with counsel was more than 30 days prior to the trial date."  Id. at 1292.  On appeal, this Court squarely held "that Storm was tried in violation of the 30-day trial preparation requirement found in § 3161(c)(2) of the Speedy Trial Act."  Id. at 1293.

The Government, on the other hand, cites United States v. Jackson, 50 F.3d 1335 (5th Cir. 1995).  In that case, the defendant's retained counsel had at least thirty days to prepare for trial.  That trial ultimately ended in a mistrial, and retained counsel withdrew.  The court subsequently appointed counsel for Jackson on February 18.  The court set the date for the second trial on March 2, prompting counsel to move for a continuance, which the district court denied.  Jackson appealed to this Court, arguing that the denial of his motion for continuance combined with

5

only seven days' notice to retry the case violated § 3161(c)(2). This Court rejected his argument, holding "that, when a defendant is represented by counsel who has had at least 30 days in which to prepare for trial, as Jackson was, § 3161(c)(2) is satisfied; the retention or appointment of new counsel does not trigger a new 30-day period." Id. at 1339.

Unlike Jackson, Perez's first attorney did not have at least 30 days to prepare for trial. Instead, the pertinent facts in Perez's case are nearly identical to the facts in Storm. Storm clearly controls this case. Accordingly, we conclude that Perez was tried in violation of the 30-day trial preparation requirement in § 3161(c)(2).

The next question is whether such error was harmless. Id. at 1294.[3] Perez adamantly argues that he was prejudiced by having only nine days to prepare for jury selection and another nine days to investigate and prepare for trial. To establish harm, Perez points to the affidavit of Armando Martin-Trevino, which his counsel obtained after the conclusion of trial.[4]

After carefully examining the record, we conclude that Perez has failed to show prejudice. Most importantly, the evidence reveals that Trevino would not have testified at Perez's trial;

---

[3] Perez recognizes that we review violations of § 3161(c)(2) for harmless error. Nonetheless, he argues that the facts of his case are such that he should not be required to show prejudice. Although we are not unsympathetic to Perez's general assertions regarding "the intangible and unprovable benefits of being prepared for trial," our precedent requires a showing of prejudice. Storm, 36 F.3d at 1294.

[4] Perez attached this affidavit to his motion for new trial, and the district court granted Perez a hearing.

6

instead, he would have invoked the Fifth Amendment.  On August 21, at the hearing on Perez's motion for new trial, Trevino invoked his Fifth Amendment privilege against self-incrimination.  Trevino asserted, however, that he would be available to testify for Perez _after_ the conclusion of his trial in Dallas, which was set to commence on September 5.[5]  Upon questioning by the court, Trevino stated that he would not have testified for Perez at the trial that commenced on June 12.  It is therefore clear that, had the district court properly given Perez's counsel the required 30-day trial preparation period, Trevino still would not have been available to testify at Perez's trial.  Moreover, even if Trevino had testified to the matter contained in the affidavit, we are satisfied that Perez has not shown prejudice sufficient to call for the vacating of Perez's convictions.

### B.    MOTION FOR NEW TRIAL

The Cisneroses argue that the district court erred in denying the motion for new trial based on the prosecution's failure to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).[6]  More specifically, relying on Trevino's aforementioned affidavit, the Cisneroses assert that the prosecution failed to disclose evidence to the

---

[5]  That trial involved an unrelated charge of conspiracy with intent to distribute seven and one-half tons of marijuana.

[6]  Perez also argues that the district court erred in denying his motion for new trial.  In support of this claim, Perez relies on the same arguments that he made to show prejudice in the context of his Speedy Trial Act violation.  For the same reasons we found those arguments unavailing, we find that the district court did not abuse its discretion in denying his motion for new trial.

7

defense that a deputy sheriff was involved in marijuana trafficking. We review a district court's denial of a motion for new trial for abuse of discretion. United States v. Adi, 759 F.2d 404, 407 (5th Cir. 1985).

After conducting an evidentiary hearing, the court below rejected the Brady claim, opining as follows:

> None of the witnesses called by the Defendant could corroborate the statements contained in the affidavit; in fact, every witness testified to evidence contrary to that in the affidavit. Additionally, the witnesses' notes, taken during the debriefings in question, conformed with the witnesses' present testimony. Thus, the Court concludes the evidence tends to show the prosecution did not withhold exculpatory information, since all the testimony offered, save that contained in the affidavit, controverts the Defendants' allegations that the prosecution was given this information.

(emphasis added).

The Cisneros brothers do not address the district court's finding that the prosecution did not withhold any exculpatory evidence. The district court's finding is supported by the record. Although Trevino asserts in his affidavit that during the debriefings he gave detailed information regarding the deputy sheriff's involvement in drug dealing; the evidence at the hearing, which the district court believed, indicated Trevino claimed that he never personally dealt with the deputy sheriff and that it was simply "common knowledge" that the deputy sheriff dealt in drugs. Under those circumstances, we cannot say the district court erred in finding that no exculpatory evidence was suppressed.

In any event, assuming arguendo that exculpatory information was withheld, we find that the information was not material. The Cisneros brothers arguments regarding the materiality prong of

8

<u>Brady</u> are rather vague and speculative. They essentially argue that the deputy sheriff's testimony, no matter how insignificant, undermined the verdict because the witness was a "dirty cop." We reject this argument. The hearsay or second-hand assertions regarding the deputy sheriff's involvement in illegal drugs do not rise to the level of the materiality standard required to establish a successful <u>Brady</u> claim. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555 (1995). We conclude that the district court did not abuse its discretion in denying the motion for new trial.

C.  MOTION TO SUPPRESS

Javier Cisneros argues that the district court erred in denying the motion to suppress evidence seized from his residence. He argues that the affidavit used to obtain the warrant did not provide probable cause. "Our review of a district court's denial of a motion to suppress evidence seized pursuant to a warrant is limited to (1) whether the good-faith exception to the exclusionary rule applies, and (2) whether the warrant was supported by probable cause." <u>United States v. Alix</u>, 86 F.3d 429, 435 (5th Cir. 1996). We need not address the probable cause inquiry if the good-faith exception applies. <u>Id</u>.

"[E]vidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." <u>United States v. Satterwhite</u>, 980 F.2d 317, 320 (5th Cir. 1992) (citing <u>United States v. Leon</u>, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 3420 (1984)). "An officer may rely in good faith on the validity of a warrant so

9

long as the warrant is supported by more than a `bare bones affidavit.'" Alix, 86 F.3d at 435. An affidavit is "bare bones" if it so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable. Satterwhite, 980 F.2d at 320-21.

In the case at bar, the affidavit supporting the application for a warrant to search Javier's residence was not a "bare bones" affidavit. The affidavit was executed by a special agent of the DEA. It provided a detailed description of the premises to be searched and summarized the affiant's years of experience as a DEA agent. It also explained why, based on the agent's experience, he expected to find evidence of drug trafficking on the premises.

The affidavit provided that the affiant's investigation had uncovered the Belmontes family's large scale marijuana operation. "As part of the scheme[,] various . . . persons hired the BELMONTES to transport marijuana for them and others worked with the BELMONTES to arrange safe routes around the Border Patrol Checkpoints which are located on roads leading away from the United States/Mexican Border. These safe routes utilize back roads and ranch roads throughout South Texas."

The affidavit then provided information from a confidential informant. This information tied the Cisneros brothers to the Belmontes organization. More specifically, details were set forth regarding the Cisneroses' involvement in transporting loads of marijuana on two occasions. Additionally, the Cisneroses purchased a Ford pick-up truck and had the bill of sale put in another individual's name. A few months later, this particular truck was

seized.  The truck contained 526 pounds of marijuana.  The affiant then stated that "[t]he information provided by [the confidential informant] has been corroborated by other sources and his information is a result of his active participation in the BELMONTES drug organization."

Javier challenges the sufficiency of the affidavit, arguing that "it fails to identify the basis of knowledge of the confidential source's information, fails to sufficiently establish the confidential source's reliability and credibility, and fails to establish sufficient police corroboration."  Contrary to Javier's argument, the affidavit provides that the informant's knowledge was gained as a result of his active participation in the Belmontes' drug organization.  Moreover, "[u]ncertainty about the veracity of an informant can also be compensated for by detail of the statement or internal consistency of the statement and surrounding facts." United States v. Privette, 947 F.2d 1259, 1262 (5th Cir. 1991), cert. denied, 503 U.S. 912, 112 S.Ct. 1279 (1992).  The agent specifically averred that the information provided by the confidential informant had been corroborated by other sources.

The affidavit contained more than "bare bones" assertions.  It furnished adequate "information to allow the conclusion that a fair probability existed that seizable evidence would be found" on Javier's premises.  United States v. Restrepo, 994 F.2d 173, 189 (5th Cir. 1993).  The law enforcement officers' reliance on the warrant was objectively reasonable, rendering the good-faith exception applicable.  The district court did not err in denying Javier's motion to suppress.

11

D.    OBSTRUCTION OF JUSTICE

The Cisneroses argue that the district court erred by increasing their respective offense levels by two for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  A district court's determination that a defendant has obstructed justice is a factual finding review for clear error.  United States v. Winn, 948 F.2d 145, 161 (5th Cir. 1991), cert. denied, 503 U.S. 976, 112 S.Ct. 1599 (1992).  A district court's finding will not be deemed to be clearly erroneous unless this court is "left with the definite and firm conviction that a mistake has been committed."  United States v. Pofahl, 990 F.2d 1456, 1480 (5th Cir.), cert. denied, 510 U.S. 898, 114 S.Ct. 266 (1993) (citations omitted).

Section 3C1.1 of the sentencing guidelines provides:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by **2** levels.

The commentary provides that "escaping or attempting to escape from custody before trial or sentencing" is an example of the type of conduct that would trigger the application of this enhancement.  § 3C1.1, comment. (n.3(e)).

It is undisputed that, while awaiting sentencing in the instant case, the Cisneroses were indicted for attempted escape. The presentence report (PSR) of both the Cisneroses provided that:

According to Brownsville FBI Agent Raul Carballido, there is evidence to show that both defendants actively participated in a conspiracy with family members and others to attempt their escape from the Cameron County Jail.  . . .  According to DEA Special Agent Larry Councilman, the Cisneros brothers bribed a jail guard to facilitate their escape.  Furthermore, evidence shows

12

that a cellular phone was found in their possession that was apparently smuggled in by family members.

The district court adopted the PSR. In light of the Cisneroses' failure to offer any rebuttal evidence, the district court was free to adopt the facts in the PSR without further inquiry. United States v. Mir, 919 F.2d 940, 943 (5th Cir. 1990).[7]

The Cisneroses further argue that the district court failed to make a finding that their attempt to obstruct justice was "willful" as required under § 3C1.1. We have been unable to locate any specific objection in the record to the district court's failure to find that the Cisneroses conduct was "willful." In any event, because there is evidence that the appellants conspired with others to attempt their escape, we are satisfied that the appellants "voluntarily and intentionally" attempted to escape, which satisfies the "willfullness" requirement under § 3C1.1.[8] The district court did not clearly err in finding that the Cisneroses obstructed justice under § 3C1.1.

E.    DEFERRED ADJUDICATION AS A PRIOR CONVICTION UNDER § 841

Juan Cisneros was convicted of conspiring to possess with intent to distribute in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).

---

[7] Because there is arguably some tension in this circuit's precedent regarding whether an indictment may be used to support a sentencing court's findings, United States v. Williams, 22 F.3d 580, 582 n.9 (5th Cir.), cert. denied, 513 U.S. 951, 115 S.Ct. 367 (1994), we rely only on the representations made by the agents.

[8] Cf. United States v. O'Callaghan, 106 F.3d 1221, 1223 (5th Cir. 1997) (explaining that our review of record left us unable to determine whether the defendant "willfully" failed to appear for trial).

13

Section 841(b)(1)(A) provides that "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." Pursuant to this provision, the district court sentenced Juan Cisneros to life imprisonment. He argues that one of his previous felonies, a deferred adjudication, was not a "prior conviction" within the meaning of § 841(b)(1)(A). This issue is one of first impression in this circuit.

Juan Cisneros properly concedes that, in the absence of clear language to the contrary, federal law governs the application of federal legislation. See United States v. Vasquez-Balandran, 76 F.3d 648, 650 (5th Cir. 1996). In United States v. Morales, 854 F.2d 65, 68 (5th Cir. 1988), we concluded that the meaning of the phrase "have become final" in 21 U.S.C. § 841(b)(1)(B) was a question of federal law rather than state law. We explained that state law could be looked to "for informational purposes, but we are not bound by its treatment of a felony conviction when we apply the federal sentence-enhancement provisions." Id.

In Texas state court, Juan Cisneros received deferred adjudication for felony possession of marijuana pursuant to Tex. Code Crim. Proc. art. 42.12, § 3d(a),[9] which provided that:

> When in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the

---

[9] A subsequent reconfiguration of this statute moved the deferred adjudication provisions to section 5. See Tex. Code Crim. Proc. 42.12, § 5.

14

> defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation on reasonable terms and conditions . . . .

He now argues that the district court erred in determining that his prior state deferred adjudication was a "prior conviction" for the purposes of 21 U.S.C. § 841(b)(1)(A). In the court below, Juan Cisneros argued that because he had successfully completed his two-year deferred adjudication probation, it was an excludable drug offense and could not be used to enhance his punishment to a mandatory life sentence under § 841(b)(1)(A). The district court disagreed, ruling that this Court's decision in United States v. Giraldo-Lara, 919 F.2d 19 (5th Cir. 1990), precluded it from finding that the previous deferred adjudication was not a prior conviction.

In that case, we concluded that a Texas deferred adjudication probation counted as a "prior sentence" pursuant to U.S.S.G. § 4A1.2(a)(1) when calculating a defendant's criminal history score. This holding was based on the following language in the guidelines:

> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f). As previously set forth, deferred adjudication in Texas requires that a defendant first plead guilty or nolo contendere. Art. 42.12 § 3d(a). Therefore, applying the plain language of § 4A1.2(f), it was clear that a deferred adjudication was a "prior sentence" for purposes of calculating a

15

defendant's criminal history score. Although perhaps instructive, Giraldo-Lara is not dispositive of the issue at bar, i.e., whether a deferred adjudication constitutes a "prior conviction" under 21 U.S.C. § 841(b)(1)(A).[10]

The Government asserts that holding that Juan's deferred adjudication was such a "prior conviction" would promote the policy that defendants who obtain the advantage of a rehabilitative sentence but nevertheless continue to commit crimes should not receive further leniency. See § 4A1.2, comment. (n.9). This policy concern was expressed in the opinions of our sister circuits that have decided that deferred adjudications or probated sentences constitute convictions in the context of § 841. See United States v. Mejias, 47 F.3d 401, 404 (11th Cir. 1995); United States v. Meraz, 998 F.2d 182, 184-85 (3d Cir. 1993); United States v. Campbell, 980 F.2d 245, 249-51 (4th Cir. 1992), cert. denied, 508 U.S. 952, 113 S.Ct. 2446 (1993); see also United States v. McAllister, 29 F.3d 1180, 1184-85 (7th Cir. 1994).

In making that determination, several of the circuits were guided by the Supreme Court's opinion in Dickerson v. New Banner Institute, 460 U.S. 103, 103 S.Ct. 986 (1983). Mejias, 47 F.3d at 403; McAllister, 29 F.3d at 1184-85; Campbell, 980 F.2d at 251. In

---

[10] Similarly, in United States v. Stauder, 73 F.3d 56 (5th Cir. 1996), relying on the above-quoted language in § 4A1.2(f), this Court held that a Texas deferred adjudication was a conviction for purposes of determining a defendant's base offense level under § 2K2.1. We recognized that "[a]lthough § 2K2.1 uses the term `conviction,' it refers specifically to the criminal history provisions, which . . . include deferred adjudications such as Stauder's in calculating a defendant's criminal history score." Id. at 57. Like Giraldo-Lara, Stauder may be informative, but it does not control the disposition of this case.

Dickerson, the Supreme Court determined that the defendant's prior guilty plea was a conviction that could be used to deny him a license to deal firearms under 18 U.S.C. § 922(g). That section "impose[d] disabilities on one convicted of a `crime punishable by imprisonment for a term exceeding one year.'" Dickerson, 460 U.S. at 113, 103 S.Ct. at 992 (emphasis omitted). There, the defendant had pleaded guilty in Iowa state court to the crime of carrying a concealed handgun, and the state court "deferred" entry of formal judgment and placed him on probation. After the completion of his term of probation, the defendant was discharged and his record expunged.

The Court explained that "`[a] plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence.'" Id. at 112-13, 103 S.Ct. at 992 (quoting Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583 (1927)). The Court determined that "for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being `convicted' within the language of §§ 922(g) and (h)." Id. at 113, 103 S.Ct. at 992. Finally, the Court opined that the expunction under Iowa law did not change "the historical fact of the conviction." Id. at 114-15, 103 S.Ct. at 993.

In the case at bar, after receiving Juan Cisneros's guilty plea and hearing the evidence, the state trial court had to find that the evidence substantiated Cisneros's guilt in order to defer

17

the proceedings without entering an adjudication of guilt. Art. 42.12 § 3d(a). Applying the reasoning of <u>Dickerson</u>, we conclude that Juan Cisneros's guilty plea that resulted in a deferred adjudication was a "prior conviction" for purposes of sentence enhancement under § 841(b)(1)(A). The district court properly sentenced him to life imprisonment.

F.   SUFFICIENCY OF THE EVIDENCE

Finally, all three appellants make weak challenges to the sufficiency of the evidence to support their convictions. We find no merit in their arguments.

Perez first argues that the Government failed to prove as to count 10 (unlawful possession of in excess of 100 kilograms of marijuana on March 7, 1992) that he ever "possessed" the amount of drugs specified in the indictment. Perez concedes that over 1,000 pounds of marijuana was seized at Israel Cardenas's[11] house, but asserts that Arnoldo Belmontes' trial testimony attributed directly to him only "40 pounds" (roughly 18 kilograms) of the marijuana. Perez also generally alleges that the evidence was insufficient to prove he possessed <u>any</u> amount, but that at most it was forty pounds. Perez's argument is unavailing because the issue here is not ownership, however that may have been decided among the conspirators, but "possession," be it actual or constructive. <u>See United States v. Molinar-Apodaca</u>, 889 F.2d 1417, 1423 (5th Cir. 1989) (defining "constructive possession as the knowing exercise

_____

[11]   Cardenas testified that because he needed money, he stored over 1,000 pounds of marijuana at his house for the Belmontes. In exchange for his testimony at trial, the Government did not file charges against Cardenas.

of, or the knowing power or right to exercise dominion and control over the prescribed substance") (citation and internal quotation omitted). Viewed in the light most favorable to the Government, the evidence is sufficient to show that Perez constructively possessed marijuana in relation to count 10. A reasonable juror could have easily found the elements of the offense beyond a reasonable doubt.

Perez next claims that the Government failed to prove the amount of drugs alleged in count 11 (unlawful possession of in excess of 1000 kilograms). Perez claims that in Stipulation No. 4, the Government stipulated that 271 kilograms and 660 kilograms of marijuana were seized on March 24, 1992; this total of 931 kilograms is less than that charged in the offense. Contrary to Perez's argument, this Court has held that "[p]roof of the quantity of controlled substances at issue is not an element of an offense under 21 U.S.C. §§ 841(a) and 846." United States v. Montes, 976 F.2d 235, 240 (5th Cir. 1992), cert. denied, 507 U.S. 1024, 113 S.Ct. 1831 (1993). Therefore, Perez's argument that the evidence was insufficient to sustain his conviction for count 11 necessarily fails.

In regard to count 12, which involved unlawful possession of in excess of 100 kilograms of marijuana "in or about August, 1992," Perez alleges that no testimony established the exact month in which the "drug caravan" which was the subject of this indictment occurred. Perez acknowledges that a driver involved in the incident alleged in count 12, testified, albeit pursuant to "leading questions," that Perez acted as a guide several months

19

after the March 24, 1992 incident alleged in count 11. "It is sufficient if the evidence demonstrates a date reasonably near the date alleged in the indictment." United States v. Bowman, 783 F.2d 1192, 1197 (5th Cir. 1986).[12] Perez's sufficiency argument as to count 12 fails as well.

The Cisneroses complain that their convictions were based entirely upon the uncorroborated testimony of a number of coconspirators who had made deals with the Government and that the resulting convictions are so unreliable they cannot stand. Their argument focuses not on the quantity of the evidence but rather the quality of the evidence.

The law in this circuit is that a conviction may be sustained on the uncorroborated testimony of an accomplice or of a person who has entered into a plea bargain with the Government. United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991). Although the Cisneros brothers acknowledge our precedent, they nevertheless persist in their claims. They present nothing to indicate that Osum should not apply to this case. Moreover, the telephone records and the testimony of law enforcement officers regarding

---

[12] Perez also challenges the sufficiency of the evidence on count 17, the conspiracy count. Perez argues that the indictment charges him with conspiring with a dozen individuals to traffic in marijuana, but that at trial the only conspirator he was ever linked to was Arnoldo Belmontes. Perez claims that the Government did not prove the conspiracy alleged, but rather proved several smaller conspiracies, only one of which included him but all of which contained the common ingredient of Arnoldo Belmontes. Contrary to Perez's assertion, viewing the evidence in the light most favorable to the government, the evidence was not such that it would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt. United States v. Morris, 46 F.3d 410, 415 (5th Cir.), cert. denied, __ U.S. __, 115 S.Ct. 2595 (1995).

seizures of vehicles containing drugs circumstantially supported the coconspirator testimony. The Cisneroses elicited details of each witnesses' arrangement with the Government on cross-examination in front of the jury; no more is required. <u>See United States v. Jaras</u>, 86 F.3d 383, 387-88 (5th Cir. 1996).[13]

Regarding the money laundering count, the Government relies upon the Cisneros brothers' purchase of a truck for cash, the titling of that truck in another's name, and the use of that truck for drug transportation. The evidence is sufficient on all counts.

AFFIRMED.

---

[13] The Cisneroses further suggest that the district court erred by not instructing the jury that corroboration of the coconspirators' testimony was needed. The court did instruct the jury that it should consider with great care the accomplice testimony. In any event, in light of our precedent, the Cisneroses have not shown that the district court erred.