**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-10663**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JEROME HEATH SENA,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(97-CR-65-2)**
_____

September 13, 1999

Before DUHÉ, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Jerome Heath Sena appeals his convictions and sentences for conspiracy to possess and possession with intent to distribute methamphetamine, challenging, _for the first time on appeal_, the sufficiency of the evidence and the methamphetamine quantity used for sentencing. Because these claims were _not_ raised in district court, the scope of our review is quite limited; we **AFFIRM**.

I.

On 22 November 1997, on Interstate 40 near Amarillo, Texas, a Deputy Sheriff stopped a vehicle for a traffic violation. Christopher McDonald was driving; Hope Huerta, in the front

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

passenger seat. When they gave conflicting accounts, the Deputy sought, and received from McDonald, consent to search the vehicle. Discovered in the search were "bricks or bundles" wrapped in duct tape, which contained 13.66 kilograms (approximately 32 pounds) of methamphetamine.

Post-arrest, after McDonald agreed to cooperate with law enforcement officials, he told them that he was delivering the methamphetamine to appellant Sena. He also agreed to make recorded telephone calls to Sena, in an effort to arrange a controlled drug transaction.

On 23 November, the day after the traffic stop, the Agents drove McDonald to the trailer in Amarillo where Sena lived with several others. McDonald went inside to collect $10,000 that Sena owed him for three kilograms of methamphetamine that McDonald had "fronted" to him earlier; McDonald returned with the money and gave it to the Agents, who then obtained a search warrant for the trailer.

Discovered in the search of the trailer were plastic wrap, duct tape, digital scales, a weekly planner with apparent notations for drug transactions, marijuana, and a small quantity of methamphetamine. The Agents arrested Sena, who told them that McDonald was his main supplier. The Agents found $2,000 in cash on Sena's person.

McDonald testified at trial that, in July 1997, working for Huerta, he first started bringing methamphetamine from California to Amarillo; that a woman named Frances introduced him to Sena;

that he would give Sena a "couple [of pounds] at a time" to sell, and Sena would "bring me back the money"; and that, as of 22 November (when McDonald was arrested), Sena owed him for three pounds of methamphetamine. As for the 32 pounds of methamphetamine seized in the 22 November traffic stop, McDonald testified that he "would have brought all 32 pounds to Amarillo to [Sena] and I would have put it away in a refrigerator and held it and sold him so many — two at a time".

At the close of the Government's case, Sena did *not* move for judgment of acquittal; nor did he call any witnesses in his defense. He was convicted for conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The jury also found $11,880 forfeitable as drug proceeds.

Sena's Presentence Report (PSR) calculated his base offense level at 38, based on the entire amount of methamphetamine seized in the traffic stop. U.S.S.G. § 2D1.1. With Sena's criminal history category of I, the Guidelines' imprisonment range was 235 to 293 months. The district court sentenced Sena at the bottom of that range — concurrent 235-month terms of imprisonment and concurrent five-year supervised-release terms.

## II.

Sena challenges the sufficiency of the evidence for his convictions, and the methamphetamine quantity used for his base

offense level.  As stated, these issues were *not* raised in district court.

A.

Because Sena did not move for judgment of acquittal, our review is "limited to the determination of whether there was a manifest miscarriage of justice". **United States v. Ruiz**, 860 F.2d 615, 617 (5th Cir. 1988).  "Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt ... or ... because evidence on a key element of the offense was so tenuous that a conviction would be shocking."  **Id**. (internal quotation marks and citations omitted).

1.

For his conspiracy conviction, Sena contends that the methamphetamine quantity alleged in the indictment is an element of the offense, and that the Government failed to prove that he conspired to possess 35 pounds of it.  As he concedes, this contention is foreclosed by our precedent:  "proof of the quantity of controlled substances at issue is not an element of an offense under 21 U.S.C. §§ 841(a)(1) and 846".  *E.g.*, **United States v. Cisneros**, 112 F.3d 1272, 1282 (5th Cir. 1997) (brackets, internal quotation marks, and citation omitted).

Obviously, the record is far from devoid of evidence either that Sena knowingly agreed to traffic in methamphetamine or that he voluntarily participated in the agreement.  *See* **United States v. Gonzalez**, 76 F.3d 1339, 1346 (5th Cir. 1996) (to convict for narcotics conspiracy, Government must prove existence of agreement

- 4 -

to violate drug-trafficking laws, defendant's knowledge of agreement, and defendant's voluntary participation in agreement). The Government presented evidence that Sena had a standing agreement to buy methamphetamine from McDonald, which he then distributed.

2.

Sena's sufficiency challenge to his possession conviction is likewise premised on the contention that the methamphetamine quantity alleged in the indictment is an element of the offense. And, he asserts that there is no evidence that he ever had constructive possession of the methamphetamine seized during the traffic stop.

Acknowledging that his sufficiency challenge is reviewable only for a "manifest miscarriage of justice", Sena contends that this "reduced" standard of review violates the "constitutional requirement of proof beyond a reasonable doubt". He contends further that the standard violates the Equal Protection Clause because it "discriminates between those defendants whose attorneys make motions for judgment of acquittal and those ... whose attorneys do not...."

Needless to say, only our en banc court can alter our precedent regarding the standard of review for unpreserved sufficiency challenges. *E.g.*, **United States v. Laury**, 49 F.3d 145, 151 & n.15 (5th Cir.), *cert. denied*, 516 U.S. 857 (1995).

Sena's equal protection challenge is frivolous at best. "The Equal Protection Clause requires that all persons similarly

situated should be treated alike." *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir. 1999) (internal quotation marks and citation omitted). Unless the classification involves a suspect class or a fundamental right, "rational-basis review applies and this court need only determine whether the classification is rationally related to a legitimate government interest". *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998). A defendant is not rendered a member of a "suspect class" simply because, at trial, his attorney did not to move (for any number of possible reasons, many of which would be legitimate) for judgment of acquittal. *Cf*. *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994) (suspect classification involves "race, nationality, or alienage"), *cert. denied*, 514 U.S. 1025 (1995).

Nor is a "fundamental right" involved. For starters, Sena does *not* even have a constitutional right to appeal. *See* *Abney v. United States*, 431 U.S. 651, 656 (1977) (right to appeal is statutory).

Moreover, there is obviously a "rational basis" for applying a more narrow standard of review for issues not raised (forfeited) in district court. Defendants should challenge the sufficiency of the evidence *at trial*, so that the matter can be resolved then and, possibly, additional evidence adduced, rather than belatedly raising the issue for the first time on appeal.

As stated, the drug quantity charged in the indictment is *not* an element of the offense. *See* *Cisneros*, 112 F.3d at 1282. And, the record is *not* devoid of evidence of Sena's guilt; indeed, the

evidence overwhelmingly established that he possessed methamphetamine with the intent to distribute it. McDonald testified that Sena owed him $10,000 for three pounds of methamphetamine that had been "fronted" earlier; and that, after his arrest, he went into Sena's trailer and collected the $10,000. And, according to one of the officers who arrested Sena, Sena admitted that McDonald had sold him several pounds of methamphetamine on several occasions.

B.

Sena maintains that 30 pounds of methamphetamine should not have been attributed to him for sentencing purposes, because (1) he did not actually, or constructively, possess that amount; and (2) although the court determined that it was "reasonably foreseeable" to him that 30 pounds would be involved in the transaction, the court failed to make the required finding that he was aware of the "scope of jointly undertaken criminal activity". *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Smith*, 13 F.3d 860, 864-65 (5th Cir.) (defendant cannot be held accountable for acts of co-conspirators unless court finds that acts were reasonably foreseeable *and* within scope of jointly undertaken criminal activity), *cert. denied*, 511 U.S. 1134 (1994).

Sena did *not* object to the base offense level calculation of 38 (PSR ¶ 16), based on 9.15 kilograms of "actual" methamphetamine (including all of the methamphetamine seized during the traffic stop). Instead, he objected to three other PSR paragraphs: (1) ¶ 19 (no offense level reduction for role in offense), claiming that

he was a minor participant in the offense, because Huerta and McDonald were in possession of the 30 pounds and he lacked knowledge that they were transporting such large quantities; (2) ¶ 22 (total offense level calculation), claiming that the appropriate offense level should be 36, because two points should be deducted for his role as a minor participant; and (3) ¶ 40 (guideline range of 235-293 months imprisonment), claiming that, consistent with his claim that the offense level should be 36, the imprisonment range should instead be 188-235 months.

Likewise, at sentencing, Sena's counsel focused *solely* on the claim that Sena was entitled to an offense level reduction because he was a "minor participant" in the offense. In urging that reduction, counsel asserted that "there is really no evidence to support a finding that Mr. Sena could [have] reasonably foreseen that we are talking about this amount of drugs". Finding this to have been reasonably foreseeable to Sena, the court found concomitantly that Sena was *not* a minor participant.

To say the least, especially in the light of *no objection* to PSR ¶ 16 concerning the base offense level, counsel's claim that Sena *could not have reasonably foreseen* that the 30 pounds of methamphetamine would be involved, *made arguing for an offense level reduction based on Sena's role in the offense*, was inadequate to preserve his present contention that the 30 pounds were not attributable to him for calculating the base offense level (*now claiming, instead, that the court failed to find that such quantity was within the scope of jointly undertaken criminal activity*). To

preserve a contention for appeal, a party "must object with sufficient specificity to allow the trial court to address the issue". *United States v. Burton*, 126 F.3d 666, 673 (5th Cir. 1997) (internal quotation marks and citation omitted).

Accordingly, we review Sena's new base offense level challenge *only* for plain error. "Under Fed.R.Crim.P. 52(b), this court may correct forfeited errors only when the appellant shows (1) there is an error, (2) that is clear or obvious, and (3) that affects his substantial rights.... If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Waldron*, 118 F.3d 369, 371 (5th Cir. 1997) (internal quotation marks and citation omitted).

Even assuming an error, it was neither "plain" nor affected Sena's "substantial rights". The PSR held Sena responsible for 9.15 kilograms of "actual" methamphetamine, resulting in a base offense level of 38. U.S.S.G. § 2D1.1(c)(1). Even if only the five pounds (or approximately 2.2 kilograms) of methamphetamine with which Sena was personally involved had been attributed to him, his base offense level likely would have been 36. *See* U.S.S.G. § 2D1.1(c)(2) (one to three kilograms of "actual methamphetamine").

Along this line, for the offense level of 38, Sena's sentence of 235 months was at the bottom of the guideline range; the *same sentence* would have been at the top of the guideline range for an

- 9 -

offense level of 36.  *See* U.S.S.G., Ch. 5, Pt. A (Sentencing Table).  It is thus possible that Sena could have received the same sentence *even if* the court had used the quantity he now urges.

Likewise, even assuming a plain error that affected Sena's substantial rights, we would nevertheless decline to exercise our discretion to correct it, because it does not affect the fairness, integrity, or public reputation of judicial proceedings.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*