# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-30231

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CINDY SHAW, A.K.A. CYNDIA SHAW,
AND
WALTER SHAW,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(98-CR-119-1)

_____

April 4, 2001

Before REYNALDO G. GARZA,
HIGGINBOTHAM, and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

[*] Pursuant to 5TH CIR. R. 47.5, the court has
determined that this opinion should not be
published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R.
(continued...)

Walter Shaw and his wife, Cyndia Shaw,
were convicted of conspiracy to manufacture
and possession of methamphetamine. They
appeal the denial of their motion to suppress
evidence discovered in a search of their trailer.
They contend that the warrant was issued im-
properly. Cyndia Shaw also appeals the suf-
ficiency of the evidence to support her

[*](...continued)
47.5.4.

conviction of conspiracy. Finding no error, we affirm.

## I.

Chris Watson overdosed on methamphetamine, cocaine, and heroin and was admitted to Riverview Hospital. In investigating the overdose, the sheriff's department gathered enough information from Watson and his friend Stephen Lauret to obtain a search warrant for "a white trailer located at the end of O.W. Brown Road, on the left side of the roadway." Sergeant C.J. Matthews and other law enforcement officials searched what they believed was the trailer described in the warrant but soon realized they had entered the wrong residence. The occupants of that residence pointed out the correct trailer to the officers, and Matthews wrote down the numerical address.

Matthews left Trooper Matt Sinanan on the scene and returned to the sheriff's office to find Lauret to identify the Shaws' residence. He obtained from the judge a corrected warrant, which specified the numerical address of the trailer. The officers then searched the Shaws' trailer and discovered chemicals and equipment used in the production of methamphetamine.

During the search, the Shaws returned home in their car. The police apprehended them and searched the car, finding syringes, plastic baggies, coffee filters, lye, and jars filled with a clear liquid.

After being advised of his rights, Walter Shaw informed the officers that his friends Stanley Crowell and Marian Wright were making methamphetamine at a motel. Agents used the motel phone records to determine the room number, then obtained a warrant for the room 105, a search of which revealed a methamphetamine laboratory, methamphetamine, and chemicals.

Shaw and Crowell informed on each other, revealing that the two couples had worked together to produce methamphetamine. They financed the operation through shoplifting supplies and cameras that they returned to the stores for money.

Neither defendant contests that he was in possession of methamphetamine, but Cyndia contests the sufficiency of the evidence to prove her role in the conspiracy. The main question on appeal is whether the evidence found during the search of the trailer should have been suppressed.

## II.

We review the factual findings in a suppression hearing for clear error and the legal conclusions *de novo. United States v. Ceniceros,* 204 F.3d 581, 584 (5th Cir. 2000). We review the denial of a motion to suppress when a search warrant is involved using a two-step process. *United States v. Cherna,* 184 F.3d 403, 407 (5th Cir. 1999), *cert. denied,* 529 U.S. 1065 (2000).

First, we determine whether the good-faith exception to the exclusionary rule applies. *See United States v. Leon,* 468 U.S. 897, 913-14 (1984) (giving "great deference" to a magistrate's determination of probable cause). If this exception applies, we affirm. If not, we examine whether the magistrate had a substantial basis for concluding that probable cause existed. *Cherna,* 184 F.3d at 407 (internal citations omitted).

In *Leon,* the Court held that even if a warrant is invalidated, the Fourth Amendment

2

does not require suppression of the evidence if the officers reasonably relied on the warrant. *Id.* (citing *Leon,* 468 U.S. at 922). This good-faith exception does not apply when (1) "the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate 'wholly abandoned his judicial role'"; or (3) the officer "relie[d] on a warrant so lacking in probable cause as to render belief in its existence entirely unreasonable." *Id.* at 407-08 (internal citations omitted). Walter Shaw attacks the warrant on the first two grounds; Cyndia Shaw utilizes the third.

A.

Walter Shaw contends that Matthews knowingly made a false statement in his affidavit. If material in the affidavit is false, then that material should be set aside, and we must determine whether the remaining material passes constitutional muster. *See Franks v. Delaware,* 438 U.S. 154 (1978); *United States v. Dickey,* 102 F.3d 157, 162 (5th Cir. 1996). Even if the affidavit contains false statements, the fruits of the search are admissible if the affidavit, when stripped of its false or inaccurate statements, supports a finding of probable cause. *United States v. Wake,* 948 F.2d 1422, 1429 (5th Cir. 1991).

After Matthews executed the first warrant on the wrong trailer, he returned to the sheriff's office to draft a second one. The district court found that Matthews returned to the hospital to retrieve Lauret, took Lauret to O.W. Brown Road where he identified the correct trailer, dropped Lauret off at the sheriff's office where another deputy returned him to the hospital, went to the judge's residence for approval of the warrant, then returned to the Shaws' trailer for the search. Sinanan testified at the suppression hearing that about twenty minutes elapsed from the time Matthews left the scene with Lauret until the time he returned with the warrant.[2]

Shaw challenges this finding, arguing that Matthews did not have enough time to drop off Lauret and visit the judge.[3] Thus, Shaw claims, Matthews must have gone to the judge's house earlier. If he did, then he falsely swore in the affidavit that the informant had identified the residence.

The government responds that Matthews was traveling at approximately eighty miles per hour over a five-mile radius in scant traffic. The distance between O.W. Brown Road and the hospital was four to five miles. The sheriff's office was about a mile and a half from the trailer and one to two miles from the judge's residence.[4] From the time Matthews

---

[2] Sinanan stated that Matthews brought Lauret to the trailer at 12:33 a.m., left, and returned at 12:50 a.m. These times reflect testimony in the second evidentiary hearing. In the first hearing, Matthews made several mistakes in his testimony about the sequence of events, and the court found that he had furnished incorrect information. Before his testimony in the second hearing, Matthews reviewed the recorded police radio communications and telephone conversations to construct a timeline.

[3] Shaw notes that Matthews promised the judge, in an 11:48 p.m. phone call, that he would arrive in fifteen to twenty minutes, which places Matthews's arrival at somewhat earlier than the timeline allows. The judge testified that Matthews may have taken longer than twenty minutes to arrive at his house.

[4] Lt. Webb testified that it took only five
(continued...)

left the sheriff's office until the time he presented the affidavit to the judge, about twenty minutes elapsed. Deputy Brad Spillman testified that Matthews left Lauret with him at the sheriff's office, and Spillman returned Lauret to the hospital. Spillman also stated that he overheard a conversation that Lauret identified the trailer.

The district court held a suppression hearing and determined that Matthews's version of the facts was correct. When reviewing a suppression hearing, we "must give credence to the credibility choices and findings of fact of the district court unless clearly erroneous." *United States v. Raymer,* 876 F.2d 383, 386 (5th Cir. 1989). A finding is clearly erroneous only if we are left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

The district court has made a credibility determination supported by the evidence. Although Shaw presents a plausible argument to the contrary, we decline to overturn the findings.

Because we uphold the finding that Matthews took Lauret to identify the trailer before he presented his affidavit to the judge, we conclude that Matthews did not knowingly make a false statement. Thus, we need not address Shaw's further contention that the warrant, when stripped of its support in the allegedly false affidavit statement, no longer

---

[4](...continued)
minutes to go from the hospital to O.W. Brown Road while observing the speed limit. He also stated that one could make the trip from the sheriff's office to the judge's residence in a couple of minutes.

describes the trailer's location with sufficient particularity.

B.

Walter Shaw argues that the judge did not act as a detached and neutral officer in signing the warrant. He bases his contention on the transcript of the conversation between Matthews and the judge, in which the judge said:

If you want to go . . . based on the new information [the corrected address], do another [warrant], bring it, I'll be glad to sign it. I think you have probable cause and then go out and if he points out a different one and it's the same one in your search warrant, search it.

Shaw suggests that the judge instructed Matthews to bring the search warrant to his house before Matthews took Lauret to identify the residence. Shaw believes that this conduct indicated a lack of neutrality and detachment, qualities critical to the constitutionality of a warrant. *See Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326 (1979). The judge explained before the district court that he advised Matthews to obtain the second warrant even though he might have been able to use the first one. He indicated that he thought Matthews had probable cause, but he wanted Matthews to bring a warrant stating the additional information. He said he had no problems with Matthews's using the informant to identify the residence so that the police did not repeat their earlier mistake.

In *Lo-Ji Sales,* the Court found that a town justice abandoned his neutrality by signing an open-ended warrant to search for items not yet listed, then assisted in the execution of the warrant, "becom[ing] a member, if not the

leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under the authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law-enforcement officer." *Id.* at 325-36. Here, the judge did not come close to participating in the seizure of evidence; his actions do not rise to that level of involvement with the law enforcement process. *Cf. Cherna,* 184 F.3d at 408.

Shaw further avers that the judge's willingness to sign the warrant without reading the affidavit is a "rubber-stamping" of the warrant that negates neutrality and detachment. *See Leon,* 468 U.S. at 914; *United States v. Breckenridge,* 782 F.2d 1317, 1321 (5th Cir. 1986). In *Breckenridge,* the court found that a judge "rubber-stamped" a warrant because he did not read the affidavit carefully and did not know the grounds on which he issued the warrant. *Id.* Here, by contrast, the judge discussed the basis for the warrant with the officer and knew what the affidavit would say when he suggested that the officers had probable cause to search the trailer. As explained above, we adopt the district court's determination that the affidavit was true. Thus, the judge did not rubber-stamp the warrant.

Even if he had done so, the warrant is valid if the officer may reasonably rely on the judge's neutrality. *Breckenridge* held that where law enforcement officers in good faith have done everything reasonably necessary to obtain a warrant, suppressing the evidence would not further the purposes of the exclusionary rule. *Id.* at 1320 (citing *Leon*, 468 U.S. at 921 ("Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.").

This is such a case. Matthews reasonably asked the judge whether he needed a second warrant and followed the judge's advice in obtaining it. Assuming again that the affidavit was true, Matthews had no reason to doubt the judge's neutrality. He acted in sufficient good faith to entitle him to rely on the warrant.

C.

Cyndia Shaw challenges the sufficiency of the evidence in the affidavit to show probable cause to issue the warrant. "An officer may rely in good faith upon a warrant so long as the warrant is supported by more than a 'bare bones' affidavit," which is "so deficient in demonstrating probable cause that it renders the officer's belief in its existence completely unreasonable." *See United States v. Cisneros,* 112 F.3d 1272, 1278 (5th Cir. 1997).

The affidavit attached to the second warrant requested authorization to search for methamphetamine and equipment used to produce it. The affidavit contained (1) a report from the hospital that Watson had overdosed on methamphetamine; (2) the identity of the informant Lauret; (3) a statement by Lauret that he had seen Watson in possession of methamphetamine two days earlier and that Watson had told him that he had gotten it from the trailer to be searched; (4) Lauret's admission that he had gone with Watson to Shaw's trailer to purchase methamphetamine; and (5) Lauret's statement that he believed methamphetamine was manufactured at the trailer. The officers reasonably relied on the sufficiency of the affidavit in executing the search warrant. *Cf. Cisneros,* 112 F.3d at 1279 (upholding the sufficiency of an affidavit based on the statement of an informant with personal knowledge of a drug operation).

5

Therefore, the Shaws have not demonstrated that the good-faith exception to the exclusionary rule should not apply. Because the law enforcement officials acted in good faith, we need not reach the question of probable cause.

### III.

Cyndia Shaw contends that the government's evidence shows only that she had a serious drug problem. She submits that Walter Shaw was primarily responsible for the manufacturing activity and that the evidence against her was insufficient to support the conspiracy verdict.

We review the evidence in the light most favorable to the verdict, and it is sufficient if the trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Martinez,* 190 F.3d 673, 676 (5th Cir. 1999). To prove conspiracy, the government must show (1) the existence of an agreement; (2) knowledge of and intent to join it; and (3) voluntary participation in it. *Id.* "A jury may find knowledgeable, voluntary participation from presence when it would be unreasonable for anyone other than a knowledgeable participant to be present." *Id.*

Shaw weighed the chemicals, gassed the methamphetamine, and wrung used filters.[5] She furnished tools and supplies. She urged Crowell to help her husband manufacture the drug and let him live in her house to do so. She raised money to purchase materials and chemicals through shoplifting and returning stolen goods. She had ingredients and equipment used in the manufacturing process in her car and home. Viewed in the light most favorable to the jury verdict, the evidence is sufficient to find that Cyndia Wright knowingly and voluntarily participated in the conspiracy to manufacture methamphetamine.

AFFIRMED.

---

[5] "Wringing" is a process by which methamphetamine powder is extracted from the filters using water and evaporation.